Middleton, J.
 

 The specific question now before this court is: Does The Ohio Power Company have the right under the statutes, particularly Section 9192-1, General Code, and under the facts presented in the record, to appropriate a right of way for the purpose of constructing thereon a belt conveyor to transport coal from plaintiff’s coal field to its generating station, a distance of approximately four miles?
 

 The decision of this case requires a construction of Sections 9192-1 and 11046, General Code, and their application to the facts and circumstances established by the evidence.
 

 Section 9192-1, General Code, provides in part :
 

 “Any company organized for the purpose of manufacturing, generating, selling, supplying or transmitting electricity, for public and private use, may enter
 
 *476
 
 upon any land, held by any individual or corporation, whether acquired by purchase, appropriation proceedings or otherwise, * * * for the purpose of making preliminary examinations and surveys,
 
 and may appropriate so much thereof, or any right or interest therein,
 
 * * * as is deemed necessary for the erection, operation or maintenance of an
 
 electric plant,
 
 including its generating stations, substations, switching stations, transmission and distribution lines, poles, towers, piers, conduits, cables, wires
 
 and other necessary structures and appliances,
 
 or for rights of way over such lands and adjacent lands for the purpose of access to any part thereof. The right of appropriation herein granted shall be exercised in the manner and according to the same procedure as that provided by law for the appropriation of property by private corporations.” (Emphasis supplied.)
 

 Section 11046, General Code, relating to jurisdictional questions appears in the Chapter entitled “Appropriation of Property” and provides in part:
 

 “On the day named in a summons first served, or publication first completed, the probate judge or the Court of Common Pleas shall hear and determine the questions of the existence of the corporation, its right to make the appropriation, its inability to agree with the owner, and the necessity for the appropriation. Upon all these questions the burden of proof shall be upon the corporation, and any interested person shall be heard.”
 

 All jurisdictional questions arising under Section 11046, General Code, were decided by the trial court in favor of the plaintiff, except as to the
 
 right
 
 of the plaintiff to appropriate for a belt conveyor for the uses and purposes set forth in the petition. The Court of Appeals did not disturb that holding except to reverse with respect to the
 
 right
 
 of the plaintiff to make
 
 *477
 
 the appropriation. We consider that all jurisdictional requirements arising under Section 11046, General Code, are satisfied provided the
 
 right
 
 to make the appropriation exists under Section 9192-1, General Code.
 

 It is conceded that the plaintiff: is a company “organized for the purpose of manufacturing, generating, selling, supplying or transmitting electricity for public and private use. ’ ’ In that respect it meets the requirements of the statute and is, therefore, empowered to appropriate so much of private land or any right or interest therein as is deemed necessary for the erection, operation or maintenance of an electric
 
 plant.
 
 Can the proposed belt conveyor, under the circumstances established by the evidence in this case, be considered a part of the plant? Following the word “plant” this section of the Code reads, “* * * including its generating stations, substations, switching stations, transmission and distribution lines, poles, towers, piers, conduits, cables, wires
 
 and other necessary structures and appliances.
 
 * * *” (Emphasis supplied.) What is the intended scope and meaning of the phrase, “and other necessary structures and appliances”?
 

 This court recognizes the well established rule that statutes delegating authority to exercise the right of eminent domain must he strictly construed, but we do not believe that such construction should be so strict as to be unreasonable or strained. This thought was expressed by this court in
 
 Toledo & Wabash Ry. Co.
 
 v.
 
 Daniels,
 
 16 Ohio St., 390, 398, as follows :
 

 “That laws of this nature should be construed with strictness in favor of private right is conceded, but it should not be that narrow and niggardly strictness which utterly disregards the admitted policy of a law, and gives strained and secondary meanings to its language. in order to defeat that policy.” We adhere to that statement.
 

 
 *478
 
 In construing this statute we cannot ignore changes and improvements in mechanical devices which are incident to and part of the general progress of science. We must recognize the fact that a modern electric generating plant may and probably will embody many mechanical devices which were nonexistent in earlier years, and that many such devices may form necessary integral parts of a modern electric generating plant although not specifically enumerated in the statute under discussion.
 

 A belt conveyor for transporting coal is a recently developed mechanical device. We believe that it can qualify as a “structure” or “appliance” constituting part of an electric plant, provided its necessity is established.
 

 The following evidence was introduced by the plaintiff and was uncontradicted:
 

 The proposed electric generating plant is to consist of “three 150,000 kw units.” After two years study of location a site was selected near the town of Relief in Washington county on the Muskingum river opposite Moi'gan county. The necessity for using a largo quantity of water requires the plant to be located on a river. An economical source of coal or fuel is imperative. The cost of coal runs 65 per cent of the entire cost of production. To operate the first unit of the proposed plant would require 400,000 tons of coal a year. When the three contemplated units are completed and operating the requirement would be 1,200,-000 tons a year. The cost of coal affects the rates charged the customers for current. The rates go up with the cost of coal. It would not be practical to construct the proposed plant unless cheap coal could be procured. In designing this plant the necessity for providing a coal supply for about 25 years was solved by the plaintiff’s purchase of a coal field of approxi
 
 *479
 
 mately 10,000 acres which lies about four miles to the north in Morgan county. This coal field is not tapped by any existing railroad. Five miles of new railroad would have to be built to reach the coal field. The coal would then be hauled in the opposite direction and brought to the point of use by a circuitous route. The present highways which pass through or near the coal field are inadequate and would have to be rebuilt at a cost of about $650,000 to make possible truck transportation of the coal. The first unit would require a truck to enter the highway every two minutes and the addition of the other two units would increase the number proportionately. It was the opinion of the plaintiff that it would not be permitted to use the highways for such extensive trucking. The cost of delivering coal by belt conveyor was calculated to be 17 cents per ton as against 67 cents per ton by truck and lower than by any other means of transportation. In the opinion of plaintiff’s witnesses the belt conveyor would be an absolute necessity for the operation of the proposed plant.
 

 The record establishes that the plaintiff accumulates large stock piles of coal at its other plants and that the coal so accumulated is transported from such stock piles to the point of use by belt conveyors. Belt conveyors at its other plants run from 800 feet to a mile in length. Under all these circumstances it is not unreasonable to consider the mines owned by plaintiff and located some four miles from its generating station merely as large stock piles of coal.
 

 Helpful precedents are not plentiful upon the specific question now under consideration. Many decisions, however, announce general principles consistent with our conclusion, including the following:
 

 Giesy
 
 v.
 
 Cincinnati, Wilmington & Zanesville Rd. Co.
 
 (1854), 4 Ohio St., 808. Appropriation of land
 
 *480
 
 was sought for use as a part of depot grounds. The statutes then authorized the railroad company to appropriate such property as might be deemed “necessary” for its railroad including “necessary side tracks, depots, workshops and water stations.” It was argued by the landowner that the power to appropriate was not conferred unless it was shown that the
 
 very existence
 
 of the corporation depended upon a resort to the appropriation requested. This strict construction of the statute was disapproved in a comprehensive opinion written by Judge Ranney.
 

 Ward
 
 v.
 
 Marietta and Newport Turnpike & Bridge Co.
 
 (1856), 6 Ohio St., 16. Under a charter authorizing the company to construct a road and bridges and conferring on it power to “perform every act necessary to construct them, ’ ’ it was held that the construction of a toll house and the digging of a well to furnish water to those who must occupy it fell within the power granted by the charter and that the company had the incidental right to use the land in such manner for all of the purposes embraced within the object of its incorporation, including the improvements complained of.
 

 In
 
 Davis
 
 v.
 
 Board of Education of Arundel County
 
 (1934), 166 Md., 118, 170 A., 590, the Maryland Court of Appeals said:
 

 “It may be conceded that the general rule is that statutes of eminent domain are to be strictly construed * * *. But, while they should be strictly construed, the purpose and intention of the Legislature, when clearly manifested in the statute, should not be defeated by any narrow, strained, forced, or artificial construction of its language.”
 

 In both
 
 State
 
 v.
 
 Central New Jersey Telephone Co.
 
 (1891), 53 N. J. Law, 341, and
 
 Northwestern Telephone Exchange Co.
 
 v.
 
 Chicago M. & St. P. Ry. Co.
 
 (1899), 7
 
 *481
 
 Minn., 334, 79 N. W., 315, the court held that a company organized as a telegraph company had the right to condemn a right of way for a telephone line.
 

 In
 
 Wilton
 
 v.
 
 County of St.
 
 Johns, 98 Fla., 26, 123 So., 527, 65 A. L. R., 488, it was held that, ‘ ‘ where law says that private property may be taken for public use, only when it is necessary for such use, it means a reasonable, not an absolute, necessity.”
 

 In
 
 Highland Boy Cold Mining Co.
 
 v.
 
 Strickley
 
 (1904), 28 Utah, 215, 78 P., 296, the Utah court permitted the mining company to condemn a right of way for an aerial bucket line two miles in length across the private property of Striekley, under a Utah statute which provided that “the right of eminent domain may be exercised in behalf of the following public uses * * * (6) roads, railroads, tramways, tunnels, ditches, flumes, pipes, and dumping places to facilitate the milling, smelting, or other reduction of ores, or the working of mines.” Upon review of that case in the Supreme Court of the United States (200 U. S., 527, 50 L. Ed., 581, 26 S. Ct., 301), Mr. Justice Holmes, delivering the opinion of the court, used the following language :
 

 “In the opinion of the Legislature and the Supreme Court of Utah the public welfare of that state demands that aerial lines between the mines upon its mountain sides and the railways in the valleys below should not be made impossible by the refusal of a private owner to sell the right to cross his land. The Constitution of the United States does not require us to say that they are wrong.”
 

 Thus it appears that the courts have recognized the propriety of placing a reasonable construction upon statutes authorizing condemnation of private land. This is particularly true when public utilities face practical problems which are the result of mechanical and scientific progress.
 

 
 *482
 
 In reaching its conclusion this court is entitled to, and should, construe the evidence in the light of certain important well known facts such as the chaotic condition of the coal industry, its numerous strikes and “holidays,” the shortage of railroad cars, especially in time of war or national emergency, the effect of railroad strikes upon transportation of coal, and the great importance of uninterrupted production of electric energy in our national defense.
 

 Even though Section 9192-1, General Code, does not specifically mention belt conveyor, the evidence outlined above justifies the conclusion that this belt conveyor is a “structure” or “appliance” which is here necessary in the generating of electricity and is so closely associated with other necessary elements as to become in effect a part of this ‘ ‘ electric plant. ’ ’
 

 Our conclusion is in harmony with that of the Court of Appeals, that the “necessity” of the belt conveyor and the “necessity” of the appropriation of the right of way for its construction are established. The
 
 right
 
 to make the appropriation follows as a matter of course. The Common Pleas Court committed error in denying the plaintiff that right.
 

 The defendant has argued that the petition is defective because the plaintiff did not plead or prove that it had secured permission from the United States War Department to cross the navigable Muskingum river with the belt conveyor. The opposing brief asserts that this question was raised for the first time in the briefs in this court, and that the record contains no evidence relative thereto. We do not believe that the problem of procuring permission to cross the river is in any way relevant to the issue of necessity of appropriating the land of the defendant for the purposes stated in the petition. The plaintiff might eventually be prevented from operating the belt conveyor be
 
 *483
 
 cause of refusal of a permit to cross the river. It might also be prevented from constructing the belt conveyor because of inability to procure steel required in the construction. Certainly no one would argue that the plaintiff must establish its ability to procure the required construction materials as a prerequisite to determining its right to condemn this right of way. In any event we consider that problem eliminated by the statement of plaintiff’s counsel during argument, which was uncontroverted, that the plaintiff now has procured the necessary permit from the War Department to cross the Musldngum river.
 

 The judgment of the Court of Appeals is affirmed and the cause remanded for further proceedings according to law.
 

 Judgment affirmed.
 

 Weygandt, C. J., Zimmerman, Taet, Matthias and Hart, JJ., concur.