CITY OF CINCINNATI *v.* HOME FED. S. & L. ASSN. OF CINCINNATI.

292

(No. A217611—Decided January 4, 1967.)

Common Pleas Court of Hamilton County.

*Mr. William A. McClain*, city solicitor, and *Mr. John P. Scahill*, for plaintiff.
*Messrs. Frost & Jacobs, Mr. James G. Headley* and *Mr. Donald McG. Rose*, for defendant.

HESS, J.   This cause came on to be heard on the pleadings, evidence, arguments, and briefs of counsel, and was submitted to the court for determination.

The Home Federal Savings & Loan Association of Cincinnati is one of twenty defendants named in this action.   The court is concerned with the Home Federal Savings & Loan Association of Cincinnati, hereinafter referred to as defendant.

Statement of Case

On June 9, 1966, the city of Cincinnati, hereinafter referred to as plaintiff, filed its petition for appropriation of certain real estate located at 128 E. Fourth Street, Cincinnati, Ohio, owned by the defendant, which property is fully described by metes and bounds in the plaintiff's petition.   The condemnation procedure in this action was brought pursuant to Chapter 163, Revised Code.

The defendant-owner, pursuant to Section 163.09(B), Revised Code, filed an answer specifically denying the right of the plaintiff to make this appropriation, the inability of the parties to agree, the necessity for the appropriation, and stating that the proceeding is contrary to Article I (16 of the Constitution of the State of Ohio).   More specifically the defendant claims, first, plaintiff has alleged that it is taking the property for urban renewal but, in fact, has singled out individual structures to

be taken within one city block for two separate uses. The defendant further contends that the selection of its building for redevelopment purposes constitutes an abuse of discretion on the part of the legislative authority and therefore is unauthorized.

Second, the defendant further claims that the plaintiff has allowed the owner of one parcel of land now necessary to its plan of urban renewal to enjoy negotiation directly with the ultimate user of the land, while denying this privilege to the defendant. Defendant claims it has thus been denied its right to due process and equal protection granted under the Fourteenth Amendment of the United States Constitution and to due course of law under Article I (16) of the Ohio Constitution.

Third, the defendant claims that the plaintiff has failed to make a bona fide attempt to agree with defendant as it is required to do under Section 163.04, Revised Code, prior to the commencement of condemnation proceeding and that by reason thereof this condemnation proceeding is premature.

Fourth, the defendant claims the statute under which the plaintiff is proceeding specifically grants to the city the right to appeal from an adverse decision on the question of its authority to take defendant's property, but denies this right of appeal to the defendant. The defendant further claims that this procedure denies the defendant its right to due processes and equal protection granted to it by the Fourteenth Amendment of the United States Constitution and to due course of law under Article I (16) of the Ohio Constitution and therefore must be held to be null and void.

In accordance with Section 163.09(B), Revised Code, the court heard evidence touching upon the defenses set forth in the defendant's answer.

Section 163.09(B), Revised Code, provides that the burden of proving the matter set up in the answer "is upon the owner." Further this section provides that "a resolution or ordinance of the governing or controlling body, council or a board or agency declaring necessity for the appropriation shall be prima facie evidence of such necessity in the absence of proof showing an abuse of discretion by the agency in determining such necessity."

There has been introduced in evidence a resolution of intent to appropriate the subject property passed by the council of the city of Cincinnati on April 20, 1966, designated as Ordinance 185-1966, passed May 25, 1966, directing that a petition for appropriation be instituted.

### Statement of Facts

There appears to be no question concerning the fact that the defendant is the owner of an office building located on the north side of Fourth Street between Walnut and Main Streets in Cincinnati, Ohio, and known as 128 East Fourth Street, Cincinnati, Ohio. In 1958 this building was completely remodeled and modernized so that there is now located on the premises a well constructed, newly remodeled and well-built building. The main floor of the building contains the business of the defendant, the solvency of which is not questioned. The remainder of the building not occupied by the defendant is leased to various tenants who appear as other defendants in this action.

The subject property lies within a block which is known as Block B on the Urban Redevelopment Plan of Cincinnati. The intent of the redevelopment of this block is "to eliminate blight conditions from this area and to redevelop this area for its highest and best use, which is established in the Urban Renewal Plan as office or commercial development." It was not within the original contemplation of the Urban Renewal that a large part of this block would be owned and occupied by the Federal Reserve Bank of Cleveland. However, plans were changed approximately three years before this date and the Federal Reserve Bank of Cleveland came into consideration for occupancy as a part of Block B.

Presently the plan appears to be changed to subdivide the block along the north-south access at approximately mid-block with the east portion of the block to be acquired by the Federal Reserve Bank of Cleveland and the western portion being disposed to trustees for Towne Properties. The record discloses that the plaintiff is now under contract to convey a major portion of the eastern side of Block B direct to the Federal Reserve Bank of Cleveland. Part of that property is that now owned by the defendant.

The introduction of the Federal Reserve Bank of Cleveland

into Block B brought land acquisition requirements into the execution of the overall plan of urban renewal. The evidence discloses that the Federal Reserve Bank intends to erect a structure which will occupy approximately 41,000 square feet. Further the Federal Reserve Board of Governors representing the Federal Reserve Bank of Cleveland "requires any Federal Reserve office in planning new structures not to occupy more than 50% of the total land area upon which the original structure is to be built so as to provide ample room for further horizontal expansion." This provision makes it necessary for the Federal Reserve Bank of Cleveland to acquire the eastern one-half of Block B.

Part of the land necessary for the erection of the Federal Reserve Bank of Cleveland facility would include the northeast portion of Block B now designated and known as the Schmidt Building. The Federal Reserve Bank of Cleveland has purchased the Schmidt Building.

Certain other properties located on the west side of Block B known as the Tri-State Building and the Mercantile Library Building are not at this time within the condemnation contemplated by the plaintiff. However, all the property facing the north side of Fourth Street between Main and Walnut Streets are within the contemplation of redevelopment and included in Block B development.

There appears to be no substantial dispute that the plaintiff is acquiring all of the property on the north side of Fourth Street and Walnut Street for urban renewal purposes. Section I of the Resolution of the Council of the City of Cincinnati states that "it is the intent of the City of Cincinnati to appropriate to public use for urban renewal the property described, being parts of Blocks B, G, I, and N, in the central business district core Urban Renewal Project * * *"

Pursuant to such resolution the plaintiff made an offer to the defendant of a given sum of money to purchase the defendant's real estate. The offer by the plaintiff was refused by the defendant. The offer and refusal were sufficient to comply with the provision of the law in relation to the necessity for negotiation by the condemnation authority and the owner of real estate before condemnation proceedings were instituted.

## Conclusion of Law

The court will consider the contentions of the defendant as they appear in the answer and in the briefs presented to the court.

When the city of Cincinnati introduced the resolution of the city to acquire the subject property, it established a prima facie case on behalf of the plaintiff. The court is therefore primarily concerned with the validity of the defenses presented by the defendant.

*Is the plaintiff's condemnation of defendant's building as part of a structure by structure taking, and thus an abuse of discretion on behalf of the plaintiff?*

The court finds from the evidence that this is not a structure by structure taking. Every parcel of real estate on the north side of Fourth Street between Main and Walnut Streets is being acquired by the plaintiff. One of those properties is owned by the defendant herein. Since several pieces of property are owned by different individuals, the city must proceed against the individual owners as part of an overall acquisition. The defendant cannot be heard to complain that it may be the first, last, or only owner not willing to sell at private sale and thus make condemnation proceedings against it necessary. The law provides for the acquisition of this property either by private purchase or condemnation proceedings.

The taking of private property with the intent to redevelop it through either public or private enterprise in a matter consistent with land use control has been held to be a taking for public use and purpose in all states of the union. *Miller* v. *City of Tacoma,* 61 Wash. 2d 374, 378 P. 2d 464, 477, 476, etc.; *Berman* v. *Parker,* 348 U. S. 26; *Grisanti* v. *City of Cleveland,* 89 Ohio Law Abs. 1, 173 Ohio St. 386. These cases are sufficient to establish the constitutionality of Urban Renewal in respect to the United States Constitution. In the case of *Bruestle* v. *Rich,* 159 Ohio St. 13, the Supreme Court of Ohio has upheld redevelopment itself as a public use and purpose.

In the case of *Grisanti* v. *City of Cleveland, supra,* it was held that:

"The City acting through its planning commission and the City Council, in adopting an Urban Renewal Plan and deter-

mining that the area in question was, in fact, a blighted area deteriorated and deteriorating, and as a consequence detrimental to public health, safety and welfare, was acting in its exercise of governmental power for a public purpose and the courts are not permitted to substitute their judgment for the judgment of the legislative body of the city unless such body has exceeded its constitutional powers, or has acted fraudulently or in bad faith, or has abused its discretion.''

*Was the city's action in permitting the owners of the Schmidt Building to negotiate with the Federal Reserve Bank of Cleveland on the open market an unequal and discriminatory treatment of one of the members of the same class and in violation of the due process clause of the Ohio and United States Constitutions?*

The answer to this question must be in the negative. There is not sufficient evidence in the record in this case to justify holding that the plaintiff acted in any discriminatory manner by not condemning the Schmidt Building, and in acquiescing in the negotiation wherein the Federal Reserve Bank of Cleveland was able to acquire the Schmidt Building and bring it into the area of the reconstruction of Block B, brings about any inequality or discrimination in the acquiring of the defendant's property through condemnation proceedings.

*Did the city or plaintiff herein fail in its attempt to negotiate a private purchase of the defendant's property prior to the instigation of the condemnation proceedings herein?*

Section 163.04, Revised Code, provides:

''Appropriation shall be made only after the agency is unable to agree, for any reason, with the owner * * *''

There is evidence in this case of an attempt to establish a negotiation between the plaintiff and defendant, which was not successful.

Just how much negotiation must take place before acquiring property through condemnation proceedings has not been spelled out in Ohio. Each case must stand on its own. The defendant knew the amount of money the plaintiff was willing to pay for the property before proceeding with condemnation. The amount offered was refused. The owner was offered $900,000, which was refused together with the statement by the president

of the defendant corporation that he "would be prepared to advise my people to accept $11,200,000 if such an offer was forthcoming." It cannot be held that there was insufficient negotiation in the instant case.

*Did the plaintiff grant a right to appeal to the condemnor while denying this right to the property owner and thus engage in unequal protection of the law guaranteed by the 14th Amendment of the United States Constitution and due course of law under Article I (16) of the Ohio Constitution?*

To support the defendant in its contention that there was an unequal protection of the law would be to ignore Section 163.19, Revised Code, which states in part:

"Any party may prosecute appeals as in other civil actions from the judgment of the court."

The defendant's contention that it is being denied the right of appeal cannot be supported. *Ornstein* v. *Chesapeake & Ohio Railway Co.,* 123 Ohio St. 260.

This court must come to the conclusion that the defenses raised by the defendant, Home Federal Savings & Loan Association of Cincinnati, to the condemnation proceedings in this case have not been supported by the law or the evidence and that the assessing compensation action should proceed.

An entry may be presented in accordance with this finding.