BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF COLUMBUS, OHIO, APPELLANT, *v.* HOLDING CORPORATION OF OHIO ET AL., APPELLEES.

[Cite as Board of Edn. v. Holding Corp. of Ohio (1971), 29 Ohio App. 2d 114.]

(No. 71-93—Decided August 17, 1971.)

*Mr. John C. Young*, city attorney, *Mr. William J. Melvin, Mr. Earl J. Silberman* and *Miss Donna J. Bowman*, for appellant.

*Messrs. Lucas, Prendergast, Albright, Gibson, Brown & Newman* and *Mr. George C. Smith*, prosecuting attorney, for appellees.

Troop, P. J. This appeal is from a judgment of the Common Pleas Court entered March 9, 1971, although referred to in the notice of appeal as rendered January 11, 1971, the day upon which the "decision" of the trial court was entered. No objection having been made, the notice of appeal is considered amended to read correctly.

The judgment from which this appeal is taken, upon questions of law, dismissed the petition for the appropriation of 7.1566 acres of land, filed by the Board of Education of the City School District of Columbus, Ohio, referred to herein as the board or the plaintiff. The land which the board sought to appropriate belonged to the Holding Corporation of Ohio, referred to as the defendant, the owner of a 150-acre tract of which the land sought was a part.

The entry, filed March 9, 1971, includes a finding by the court, as follows:

"* * * that the land to be taken is approximately in the middle of a large tract and has no present means of ingress or egress. The court further finds that there is no necessity to make this appropriation and therefore there is no right to do so, and the court finds the issues in favor of the owner and against the Board of Education of the City School District of Columbus, Ohio."

There are two assignments of error offered in support of the appeal, which read as follows:

"The court erred, as a matter of law, in finding that since there is no present ingress and egress to the subject property there is no public necessity to make the appropriation and therefore there is no right to do so."

"The trial court erred, as a matter of law, by failing to find the property owner did not sustain the necessary legal burden of proof required by statute and further by

failing to find the Board of Education abused its discretion in determining the necessity for appropriation."

No objection having been made at the time of hearing before the trial court, or in briefs or oral argument before this court, to the procedures followed by the board before, and up to and including the hearing on the matter, it is assumed that all necessary procedural steps were taken and that no error is present in the record of preliminary matters before this court.

Basic to resolving a dispute between a public agency and a landowner is the constitutional provision in Section 19, Article I of the Ohio Constitution, which reads as follows:

"Private property shall ever be held inviolate but subservient to the public welfare * * * and in all other cases, where private property shall be taken for public use, a compensation therefor shall first be made in money * * * and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner."

The right of eminent domain may be exercised by the General Assembly itself directly, or indirectly by a public agency upon which the General Assembly confers the right. That this board, here concerned, is a grantee of that right appears from statutory enactment. The pertinent parts of those laws in point are as follows:

R. C. 3313.37

"The board of education of any school district * * * may build, enlarge, repair, and furnish the necessary schoolhouses, purchase or lease sites therefor, or rights of way thereto, * * * and make all other necessary provisions for the schools under its control.

"The boards of education may acquire land * * * by purchase, or by appropriation. * * *"

R. C. 3313.39

"When it is necessary, in the opinion of any board of education, to procure * * * (A) any site for a building to be used for public school purposes * * * or other education purposes * * * the board may proceed to appropriate

such property in accordance with Sections 163.01 to 163.22, inclusive, of the Revised Code.''

Under that authority the board adopted a necessary resolution on November 4, 1969, in which the board ''finds it necessary to procure certain real estate for the purpose of a public school site.'' The land which is the object of the resolution is the 7.1566 acres noted. Section 3 of the resolution goes on to say that the board ''hereby declares its intention to take immediate possession of said real estate.'' Further, the resolution recites the value of the tract determined by the board, appropriates that amount of money and provides for its deposit with the court at the time of filing the petition for appropriation.

The petition for appropriation was filed on November 18, 1969. Appropriate exhibits and necessary procedural proofs were also filed. An answer, significant to this appeal, was filed by the defendant on December 22, 1969. In response to certain allegations contained in the answer, and the request for a hearing contained in the prayer, a hearing was set for, and had, on April 6, 1970, pursuant to R. C. 163.09(B).

Formerly, the only issue that could be tried in an appropriation matter was the matter of compensation. To challenge necessity, or public use, was by way of injunction. (*Sargent* v. *Cincinnati* [1924], 110 Ohio St. 444.) Relatively recent enactments of the General Assembly have changed that format. Recognition of the new statutory procedures, and approval thereof by this court, as well as a pronouncement that the law must be followed strictly, appears in *Masheter* v. *Benua* (1970), 24 Ohio App. 2d 7. Because of their importance to this controversy, portions of two sections of the Act are quoted, as follows:

*R. C. 163.06(A)*

''A public agency, other than an agency appropriating property for the purposes described in division (B) of this section, which qualifies pursuant to Section 19 of Article I, Ohio Constitution, may deposit with the court at the time of filing the petition the value of such property

appropriated together with the damages, if any, to the residue, as determined by the public agency, and thereupon take possession of and enter upon the property appropriated. * * *''

R. C. 163.09(B)

''When an answer is filed pursuant to Section 163.08 of the Revised Code, and any of the matters relating to the right to make the appropriation, the inability of the parties to agree, or the necessity for the appropriation are specifically denied in the manner provided in such section, the court shall set a day, not less than five nor more than fifteen days from the date the answer was filed to hear such questions. Upon such questions, the burden of proof is upon the owner. A resolution or ordinance of the governing or controlling body, council, or board of the agency declaring the necessity for the appropriation shall be prima-facie evidence of such necessity in the absence of proof showing an abuse of discretion by the agency in determining such necessity. * * *''

The questions raised by this appeal are not only troublesome, but, so far as the research incident to this decision shows, unique. There is no dispute about the basic, and troublesome, fact. The land sought to be appropriated is in the middle of a large tract and presently has no means of ingress and egress. That fact appears to have determined the finding of the court, entry filed March 9, 1971, to wit:

''The court finds that there is no necessity to make this appropriation and therefore there is no right to do so * * *''

The ''decision'' of the court, filed January 11, 1971, helps but little in reducing the troublesomeness of the problems, but it does contain some observations pertinent to this discussion. It is indicated that the hearing was held pursuant to R. C. 163.09(B), as requested by the defendant in its answer—''to determine necessity of the appropriation, right of immediate possession, and right to make the appropriation.'' In a later paragraph, the court said: ''The right of immediate possession, was not argued,''

and added that the other two questions, "necessity and right to make the appropriation," are allied.

An examination of the transcript of the hearing shows that no evidence was adduced, aside from the stipulation of an exhibit, but consists entirely of the arguments of counsel, none of which touches the matter of "immediate possession." No intention of the board to immediately occupy was indicated and such was not claimed by counsel for the defendant.

The trial judge concluded, in his decision, "that on the mere face of the matter, there cannot be a necessity or a right in a governmental body to take that which cannot be used." It would appear that the trial judge assumed that "immediate" use is prerequisite to "public use" and the right to appropriate. The court voiced its criticism of the board for attempting to appropriate a landlocked tract, saying: "For it shows an overriding purpose to drive a hard bargain." It added: "it is obvious that the landowner has a similar purpose in his bargaining," and then the court observed that "what is excusable in an individual landowner is not excusable in the appropriating agency."

It is difficult to see that driving a hard bargain is a virtue if done by a citizen, but to drive one in defense of taxpayers' dollars is a sin, but if it be so it must have been ever thus, or the use of a jury to settle the matter would never have been contrived and used for these many years.

When confronted with an imponderable, for which there is no authority squarely in point, resort to a brief review of the basic rules and concepts becomes enticing. Necessity and the right to take are associated, as the trial court suggested, and "necessity" means because of a "public use"; or as Section 19, Article I, puts it, the "public welfare" must be shown to make private property subservient.

The right of eminent domain may be exercised by the General Assembly or delegated to agencies, and the exercise of the power is subject to review by the courts. Certain clearly defined rules guide the exercise of the power to review, as indicated in a fairly early decision in *Giesy* v.

*Cincinnati, Wilmington & Zanesville Rd. Co.* (1854), 4 Ohio St. 308, which states, at page 309:

"It may be exercised directly or indirectly by the General Assembly, without the intervention of the judiciary, except for determining the amount of compensation. But the courts possess full power to determine its proper limits, and to prevent abuses in its exercise."

A case decided 50 years later, *Little Miami Light, Heat & Power Co.* v. *White* (1906), 5 N. P. (N. S.) 201, affirmed, 77 Ohio St. 633, puts it as follows:

"The judiciary will not interfere with the exercise of legislative authority in conferring the power of eminent domain, unless there appears to be a gross and manifest abuse of such authority."

More currently, note the decision in *State, ex rel. Gordon,* v. *Rhodes* (1951), 156 Ohio St. 81. The pertinent syllabus rule is as follows:

"The determination of what constitutes a public municipal purpose is primarily a function of the legislative body of the municipality, subject to review by the courts, and such determination by the legislative body will not be overruled by the courts except in instances where that determination is manifestly arbitrary or unreasonable."

Greater latitude is shown in the urban renewal appropriation cases than characterizes earlier decisions, such as found in *Cincinnati* v. *Home Federal Savings & Loan Assn. of Cincinnati* (1967), 10 Ohio Misc. 291, 225 N. E. 2d 293. Particularly noteworthy is the decision of the Supreme Court in *State, ex rel. Bruestle,* v. *Rich* (1953), 159 Ohio St. 13. Two syllabus rules read as follows:

"2. Under Section 19 of Article I of the Ohio Constitution property taken for 'the public welfare' is regarded as property 'taken for public use.'

"3. Property may be taken for 'the public welfare' or 'for public use,' as those words are used in Section 19 of Article I of the Ohio Constitution, even though it is contemplated that there will at some future time be no use or right of use of the property taken on the part of the 'public or some limited portion thereof."

The decision in *Bruestle* should be noted carefully because it comments upon the decision of the Supreme Court in *Pontiac Improvement Co. v. Board of Commrs. of Cleveland Metropolitan Park Dist.* (1922), 104 Ohio St. 447, upon which appellees rely and from which they quote in their brief. The quoted material, from page 458, is reflected in Syllabus 3, which reads as follows:

"The phrase, 'where private property shall be taken for public use,' contained in Section 19, Article I of the Constitution of Ohio, implies possession, occupation and enjoyment of the property by the public, or by public agencies, to be used for public purposes."

It must be emphasized that *Pontiac Improvement Co.* deals with a very limited situation. The park board simply wanted to control the use the owner made of his land. The court said, "In the description by the park board of the rights and privileges which it seeks to condemn it is not shown that there is any intention to take possession of the property" (page 457), which prompts the court to say later: "The natural import of the words, 'taken for public use,' used in our Constitution is that the thing is to be used by the public or by some agency for the public" (page 459). The significant phrase is, "is to be used." In the slum clearance plan involved in *Bruestle* there would be land used and ultimately no use or right of use, which the respondents said invoked the *Pontiac* rule. Referring to the *Pontiac* decision, the court, in *Bruestle,* said, at page 26, as follows:

"* * * the decision in that case could rest either upon the statement of law set forth in the first paragraph of the syllabus or that in the second paragraph of the syllabus. So far as the third paragraph of the syllabus supports the foregoing contention of respondents, it appears to be contrary to the intention expressed by the people by the words used in Section 19 of Article I of the Constitution and inconsistent with other pronouncements of this court. * * *"

In other words, "possession, occupation and enjoyment" are not sweepingly conclusive concepts which imply use immediately and forever, but they are "limited"

(*Bruestle,* paragraph three of the syllabus) by the Constitution and by Supreme Court decisions.

Appellees also cite *State, ex rel. Sun Oil Co.,* v. *Euclid* (1955), 164 Ohio St. 265, as authority for its position. Sun-Oil had been refused a building permit for a filling station at a given location. The action was for a writ of mandamus requiring the issuance of the permit. The Supreme Court said that although municipal corporations are permitted to appropriate private property for public purposes —"they must in doing so, follow strictly the modes of procedure prescribed by statute, where there is no ordinance or charter provision therefor" (paragraph two of the syllabus). The syllabus rule announced reads as follows:

"4. A municipal corporation has no power or authority to appropriate lands for some contemplated but undetermined future use."

In *Sun Oil,* no grantee agency through its legislative body had completed the necessary steps, required by statute to establish a street, a condition precedent to appropriation for the contemplated public use, which according to the Supreme Court was a freeway "still in a visionary stage" (page 271).

A recent decision in *Ohio Power Co.* v. *Diller* (1969), 18 Ohio App. 2d 167, must be included in this review, because it speaks on several facets of this case and because it holds R. C. 163.09 (B) to be a constitutional enactment of the Ohio Legislature (paragraph six of the syllabus). Pertinent paragraphs of the syllabus are as follows:

"1. The only prerequisite required by the Constitution of the state of Ohio in the appropriation of private property or public use is that compensation for such property appropriated be first made in money.

"2. The Legislature has authority to prescribe the circumstances that shall constitute prima facie evidence of a fact in issue in the courts of this state.
"* * *

"4. The only manner in which the decision of a grantee of the power of eminent domain to exercise its right of appropriation of private property for public use can be

attacked is on the basis of abuse of discretion on the part of such grantee."

Appellees rely also upon propositions of the text-writers in support of its contentions. These need examination and appraisal. 29A Corpus Juris Secundum 266, Section 31, is quoted, as follows:

"The conditions which make the use public must exist at the time of taking * * *."

Standing alone, the proposition carries some force, but it avoids the flat statement, at page 299, Section 62, of the same work, which says that "public education is a public use or purpose." Such purpose is everywhere, and all the time existing, as it will be at the time of taking in the instant case.

So appellees use 19 Ohio Jurisprudence 2d 432, Section 22, to say that "the question whether or not the use for which property is proposed to be taken is a public use is a judicial question." But that same section goes on to say, at page 433, that the power of eminent domain "can only be restrained by the judiciary when its limits have been exceeded or its authority has been abused or perverted." And, further, that "there is a presumption in favor of the public character of the use, arising from its having been authorized by the Legislature"; that "primarily, the question as to whether a particular use is public in character, so as to authorize the grant of the power of eminent domain, is for the Legislature"; and that "courts may properly inquire into the good faith of such declaration, and whether there has been a manifest abuse of power."

29A Corpus Juris Secundum 252, Section 30, agrees that the determination of "public use" is ordinarily for the courts, and adds, "but a legislative declaration that the use is public is entitled to great weight and the presumption is in its favor." Note also page 267, Section 31 (b), which says: "The character of the use, and not its extent or the number of users, determines the question of public use."

The textwriters say also that the grantee of the legislative power of eminent domain has the right to determine

124

the location and route of the land to be taken for the use (29A Corpus Juris Secundum 376, Section 91), and that a contention that some "other location might be made" is not a valid objection (29A Corpus Juris Secundum 378, Section 91), and within reasonable and statutory limits "the grantee has discretion in determining the amount required" (id. at 379, Section 92).

And, continuing (page 386, Section 92). the public agency may "provide for not only its present but also its prospective necessities" "if it is not more than may in good faith be presumed necessary for future use within a reasonable time." 26 American Jurisprudence 2d 780, Section 121, says that a school board may take land it needs "subject to review by the courts only for fraud or for gross abuse of discretion." Municipalities may choose location and direction for street railways (*Langenau Mfg. Co.* v. *Cleveland* [1953], 159 Ohio St. 525), a housing authority for parking space (*Blakemore* v. *Cincinnati Metropolitan Housing Authority* [1943], 74 Ohio App. 5); the Director of Highways for the route of a state highway through a municipality (*Lakewood* v. *Thormeyer* [1959], 111 Ohio App. 403); and a public utility for its power lines (*Ohio Edison Co.* v. *Gantz* [1958], 109 Ohio App. 127). A grantee agency may also anticipate and provide for the future, *i. e.,* "purpose of conserving natural resources" (*Snyder* v. *Board of Park Commrs. of Cleveland Metropolitan Park Dist.* [1932], 125 Ohio St. 336).

With that panorama in view, agreement with the textwriters of 26 American Jurisprudence 2d who, at page 671, Section 27, say that "public use" is not capable of precise definition; nor is the range of discretion of a grantee public agency any easier to measure.

Counsel for appellees summarize the position of Holding Corporation rather succinctly at page 16 of the transcript. In his remarks to the court, Mr. Williams said that the board was trying to, number one, "take their choice site without consideration of what the developer's needs are"; secondly, "they are anticipating then that we will dedicate the necessary right-of-way so they can get to their

site." And then to make a bona fide legal issue out of such contention, he concluded, "which I don't feel meets either test of just compensation or public use."

To acquire a tract of land for the purpose of erecting a school building is by legislative fiat and common understanding for a public use. The size of the tract and its location are within the discretion of the board. If the site presently selected required a means of ingress and egress, the board has the right to appropriate it. That they may do in a separate appropriation action under R. C. 3313.37, the language of which does not tie the right to the tract, but rather, implies a possible difference in timing. If the board is in fact attempting to hijack access, the price they may pay may impugn their judgment, but bad judgment is not an abuse of discretion.

The "necessity" for this appropriation having been challenged by the appellees, the burden is upon them to establish that there is no such necessity. The resolution of the board is prima facie evidence of that necessity; and it stands, in the absence of a showing of an abuse by the board. (See paragraph two of the syllabus of *Ohio Power,* supra.)

There is no showing of an abuse of discretion, nor an attempt by appellees or counsel to establish such. The trial court seems to feel that it was unwise to own a tract of land without access, and it may be, but the use is a public use and the board will take possession when it records a title instrument although use may be for the future, which, by decision law, does not destroy public use.

The major issue at this stage of this proceeding is obvious from the stance taken by the appellees in argument. The "choice site," no consideration of the "developer's needs," argument is strictly monetary. If the parties here involved are attempting to drive a hard bargain, either or both of them, it is exactly the situation anticipated by the framers of the Constitution who provided that "compensation shall be assessed by a jury." The value of the property taken must cover the highest and best use "to which it can reasonably and practically be adapted" and

"within the contemplation of the parties at the time" (19 Ohio Jurisprudence 2d 538, Section 122). If the developer's needs are frustrated, and its costs increased by the appropriation of the seven plus acres resulting in damage to the residue, the developer must be paid. The rule is stated in 27 American Jurisprudence 2d 133, Section 314, as follows:

"* * * Generally speaking, in determining the diminution of the market value of the land not taken or the damages thereto, it is proper to consider the expense made necessary by reason of the improvement in order to restore the remaining land to a condition that will make it available for the most advantageous use, or for adjusting the property to the changed conditions brought about by the taking. * * *"

The court bespeaks the present feeling of this court in *Sargent* v. *Cincinnati* (1923), 25 N. P. (N. S.) 89 (affirmed, 110 Ohio St. 444), as follows, at page 95:

"* * * It seems to the court that counsel in taking this position disregarded the fundamental proposition that all private property is held subservient to the public good and subject to be taken by sovereign authority in the exercise of the right of eminent domain, upon the payment of just compensation, and that no constitutional provisions relating to the sanctity of private property and the inviolability of contracts are limitations upon the proper exercise of the right of eminent domain."

The board declared a public use, which "in the absence of fraud, bad faith, or abuse of discretion" will not be disturbed by the courts. (19 Ohio Jurisprudence 2d 427, Section 19.) There was no attempt to prove, and no proof of, fraud, bad faith, or abuse of discretion shown in the transcript or record. The decision in *Jones* v. *Maumee* (1925), 20 Ohio App. 455, puts it as follows:

"The General Assembly having delegated to municipalities the authority to appropriate private property for street purposes, the necessity of the appropriation, and the location and extent of the property to be taken, rest

in the discretion of the municipal authorities, and will not be interfered with by the courts, in the absence of fraud, bad faith, or abuse of discretion."

See, also, *Shepard Paint Co.* v. *Board of Trustees of Franklin County Veterans Memorial* (1950), 88 Ohio App. 319, which, in paragraph four of the syllabus, said:

"The necessity for and extent of property to be taken by eminent domain are questions for legislative determination, and, in the absence of fraud, bad faith or abuse of discretion, such determination will not be disturbed by the courts."

Necessity or public use was not shown to be absent by the appellees in this case.

There was no demonstrated fraud, bad faith, or abuse of discretion by the board. Appellant's assignments of error are well taken.

The trial court erred in the judgment entered, which is reversed, and the cause is remanded for further proceedings according to law and in conformity with this decision.

*Judgment reversed.*

STRAUSBAUGH and REILLY, JJ., concur.