OHIO RIVER PIPE LINE, LLC, Appellant,

v.

GUTHEIL et al., Appellees.■

[Cite as *Ohio River Pipe Line, LLC v. Gutheil* (2001), 144 Ohio App.3d 694.]

Court of Appeals of Ohio,
Fourth District, Pickaway County.

No. 2000CA36.

Decided June 20, 2001.

*Farthing & Harsha, Shelly R. Harsha* and *John P. Lavelle*; *Reminger & Reminger Co., LPA, Frank Aveni, Clifford C. Masch, Gregory D. Brunton* and *Kevin P. Foley,* for appellant.

*Dagger, Johnston, Miller, Ogilvie & Hampson, Mark R. Riegel* and *D. Joe Griffith,* for appellees Betty Jean Cluff Gutheil, Gale M. LaRue, Victoria R. LaRue, and Karl M. Barch.

*Huffer & Huffer* and *Robert Huffer,* for appellee Betty Jean Cluff Gutheil.

*Gottlieb, Johnston, Beam* and *Miles D. Fries,* for appellee Ross L. Johnston.

*Schaller, Campbell & United* and *Thomas K. Campbell,* for appellee Linda K. Weiler.

*Kenneth E. McDonough,* for appellee Columbus Southern Power Company.

*Roetzel & Andress, Laura M. Faust* and *Bradley A. Wright,* for *amicus curiae* Ohio Trucking Association.

*Vorys, Sater, Seymour & Pease, LLP, W. Jonathan Airey, Gregory D. Russell* and *Jason J. Kelroy,* for *amicus curiae* Ohio Oil and Gas Association.

*Jennifer L. Breech,* for *amicus curiae* Ohio Petroleum Marketers Association.

*Bricker & Eckler, LLP, Kurtis A. Tunnell* and *Anne Marie Sferra,* for *amicus curiae* Ohio Manufacturers' Association.

*Shumaker, Loop & Kendrick, LLP,* and *Thomas P. Dillon*; and *Sidley & Austin, Lawrence A. Miller, Lorrie M. Marcil* and *Michele F. Joy,* for *amicus curiae* Association of Oil Pipe Lines.

*Linda S. Woggon,* for *amicus curiae* Ohio Chamber of Commerce.

*Nan M. Still,* for *amici curiae* Ohio Farm Bureau Federation, Inc., and Pickaway County Farm Bureau.

*Squire, Sanders & Dempsey, L.L.P.,* and *James W. Satola,* for *amicus curiae* TE Products Pipeline Company, Limited Partnership.

---

DOAN, Judge.

Plaintiff-appellant Ohio River Pipe Line, LLC ("ORPL") filed petitions, pursuant to R.C. Chapters 163 and 1723, for the appropriation of easements in real property. ORPL sought to appropriate the easements across the properties of various defendants-appellees for the construction of an underground pipeline to transport petroleum products, such as gasoline, kerosene, jet fuel, and diesel fuel, from a refinery in Kenova, West Virginia, to Columbus, Ohio. Pursuant to R.C. 1723.01, a private company "organized for the purpose of * * * transporting

natural or artificial gas, petroleum, coal or its derivatives, * * * through tubing, pipes or conduits" has the authority to "appropriate so much of such land, or any right or interest therein, as is deemed necessary for the laying down or building of such tubing, conduits, [or] pipes * * *."

Appellee landowners filed answers and counterclaims, contesting ORPL's right to appropriate the easements. The cases were consolidated. ORPL answered the counterclaims and filed a motion to set a necessity hearing pursuant to R.C. 163.09(B). The landowners filed a motion to dismiss the appropriation petitions, which the trial court granted. The trial court held that ORPL did not intend to use the proposed pipeline to transport "petroleum" within the meaning of R.C. 1723.01. To reach this conclusion, the court determined that the term "petroleum," as used in R.C. 1723.01, referred to unrefined petroleum or crude oil, and not to refined petroleum products. ORPL has appealed.

We consider together ORPL's second and third assignments of error, which allege that the trial court erred by refusing to enforce the strict pleading requirements of R.C. 163.08, and that the trial court erred in failing to conduct the hearing mandated by R.C. 163.09(B).

"If a company is organized for the purpose of * * * transporting natural or artificial gas, petroleum, coal or its derivatives, water, or electricity, through tubing, pipes or conduits * * * for storing, transporting, or transmitting water, natural or artificial gas, petroleum, or coal or its derivatives, * * * then such company may enter upon any private land to examine or survey lines for its tubing, pipes, conduits * * * and may appropriate so much of such land, or any right or interest therein, as is deemed necessary for the laying down or building of such tubing, conduits [or] pipes * * *." R.C. 1723.01.

R.C. 1723.02 requires that the appropriation be made in accordance with R.C. 163.01 through 163.22.

R.C. 163.05 provides for the filing of a petition for appropriation. The property owner may file an answer, pursuant to R.C. 163.08, that contains "a general denial or specific denial of each material allegation not admitted."

"The agency's right to make the appropriation, the inability of the parties to agree, and the necessity for the appropriation shall be resolved * * * in favor of the agency unless such matters are specifically denied in the answer and the facts relied upon in support of such denial are set forth therein[.]" R.C. 163.08.

When an answer specifically denies the right of the agency to make the appropriation, the inability of the parties to agree, or the necessity for the appropriation, the trial court must set a date "not less than five [nor] more than fifteen days from the date the answer was filed, to hear such questions." R.C. 163.09(B). The burden of proof is on the property owner. *Id.* If the answer

does not specifically deny the right of the agency to make the appropriation, the inability of the parties to agree, or the necessity for the appropriation, the court must hold a hearing to assess compensation within twenty days of the filing of the answer. R.C. 163.09(C).

ORPL argues that the landowners failed to specifically deny that ORPL would transport petroleum through the pipeline, that the parties were unable to agree, or that the easement was necessary. Therefore, ORPL argues, those issues should have been deemed admitted, and the trial court should have set the matter for a compensation hearing. Alternatively, ORPL argues that if the trial court determined that the denials were sufficiently specific, it should have held the necessity hearing within fifteen days of the filing of the answers.

■ If the landowners' answers specifically denied ORPL's right to make the appropriations or the necessity of the appropriations, and set forth sufficient facts to support the denials, R.C. 163.08 and 163.09 mandated a hearing on those issues between five and fifteen days after the filing of the answers. See *Weir v. Wiseman* (1982), 2 Ohio St.3d 92, 2 OBR 644, 443 N.E.2d 152. The right to a necessity hearing may be enforced through a writ of mandamus. See *State ex rel. Horwitz v. Cuyahoga Cty. Court of Common Pleas* (1992), 65 Ohio St.3d 323, 603 N.E.2d 1005.

The trial court was required as a matter of law to examine the answers to determine whether they set forth specific denials supported by facts. If they did not, a hearing on damages was mandated within twenty days. If the court determined that the answers contained specific denials supported with sufficient facts, it had a duty to hold a necessity hearing five to fifteen days after the answers were filed to decide any issues raised by the answers, including ORPL's right to make the appropriations, the inability of the parties to agree, and the necessity of the appropriations. We have reviewed the answers, and we hold that the denials set forth were sufficiently specific and factually supported to have required a necessity hearing.

ORPL filed a motion on August 3, 1999, requesting that the trial court set a necessity hearing pursuant to R.C. 163.09(B). But ORPL also engaged in discovery and at one point filed a motion for a continuance on the basis that discovery had not been completed. ORPL did not seek a writ of mandamus to enforce its right to a necessity hearing.

■ We hold that ORPL waived its right to an immediate necessity hearing by failing to pursue that right and by proceeding instead with discovery requests. See *Ohio River Pipe Line, LLC v. Henley* (2001), 144 Ohio App.3d 703, 761 N.E.2d 640. Further, in the proceedings on the motion to dismiss, the trial court reviewed the issues that should have been raised in the necessity hearing. We

hold that no error prejudicial to ORPL occurred. The second and third assignments of error are overruled.

■ ORPL's first assignment of error alleges that the trial court erred in refusing to enforce admission number six made by the landowners. ORPL's certificate of formulation stated that it was organized for the purpose of "transporting petroleum, oil and other liquids and gas through pipes and for otherwise storing, transporting and transmitting petroleum, oil and other liquids and gas[.]" ORPL sent requests for admissions to the landowners, including the one numbered 6:

"Admit that Ohio River Pipe Line, LLC, was organized for engaging in the business of transporting petroleum, oil and other liquids and gas through pipes and for otherwise storing, transporting and transmitting petroleum, oil and other liquids and gas."

The landowners responded "Admit."

We hold that what the landowners admitted was the language concerning the purpose for which ORPL was organized, as it was contained in ORPL's certificate of formulation; they did not admit that, in this particular case, ORPL had met the requirements of R.C. 1723.01. We point out that the fact that a company is formed for the purpose of transporting petroleum and oil does not necessarily mean that petroleum or oil is the substance to be transported in any given pipeline. The question here was what product was to be transported through this particular pipeline. In order to appropriate the property in question, ORPL had to meet the requirements of R.C. 1723.01 for this particular pipeline. The first assignment of error is overruled.

ORPL's fourth assignment of error alleges that the trial court erred in concluding that ORPL did not intend to transport "petroleum," within the meaning of R.C. 1723.01, through the pipeline. The trial court found that ORPL intended to transport petroleum derivatives or by-products that were not contemplated by R.C. 1723.01. The court determined that the term "petroleum," as used in R.C. 1723.01, referred to unrefined petroleum or crude oil, and not to refined petroleum products such as gasoline, kerosene, jet fuel, and diesel fuel.

In *Ohio Power Co. v. Deist* (1951), 154 Ohio St. 473, 481, 43 O.O. 420, 424, 96 N.E.2d 771, 775, the Ohio Supreme Court stated:

"Thus, it appears that the courts have recognized the propriety of placing a reasonable construction upon statutes authorizing condemnation of private land. This is particularly true when public utilities face practical problems which are the result of mechanical and scientific progress."

Other Ohio courts also support a reasonable construction of appropriation statutes.

R.C. 1.42 provides that, in statutory construction, words or phrases "that have acquired a technical or particular meaning, whether by legislative determination or otherwise, shall be construed accordingly."

ORPL presented evidence that, within the petroleum industry, the term "petroleum" included the refined products that ORPL intended to transport through the pipeline. Further, ORPL presented evidence that "petroleum" was recognized throughout the industry as including gasoline, kerosene, diesel fuel, and other refined petroleum products. ORPL's evidence showed that the refined products to be transported were merely "fractions of crude oil."

In construing statutory terms, we are guided by the legislature's use of the same terms defined elsewhere in the Revised Code. See *Cablevision of the Midwest, Inc. v. Gross* (1994), 70 Ohio St.3d 541, 639 N.E.2d 1154. The Ohio legislature has defined "petroleum" and "oil" in other sections of the Revised Code to include refined petroleum liquids.

R.C. 3737.87(J), which refers to underground storage tanks, provides:

" 'Petroleum' means petroleum, including crude oil or any fraction thereof, that is a liquid at the temperature of sixty degrees Fahrenheit and the pressure of fourteen and seven-tenths pounds per square inch absolute. The term includes, without limitation, motor fuels, jet fuels, distillate oils, residual fuel oils, lubricants, petroleum solvents, and used oils."

In R.C. 3746.01(I), the legislature has defined petroleum as follows:

" 'Petroleum' means oil or petroleum of any kind and in any form, including, without limitation, crude oil or any fraction thereof, petroleum, gasoline, kerosene, fuel oil, oil sludge, oil refuse, used oil, substances or additives utilized in the refining or blending of crude petroleum or petroleum stock, natural gas, natural gas liquids, liquefied natural gas, synthetic gas usable for fuel, and mixtures of natural gas and synthetic gas."

R.C. 1509.01(B), in defining oil, states:

" 'Oil' means crude petroleum oil and all other hydrocarbons, regardless of gravity, that are produced in liquid form by ordinary production methods, but does not include hydrocarbons that were originally in a gaseous phase in the reservoir."

In determining whether a "gas" and "oil" right-of-way was limited to the transportation of "crude oil" and "natural gas" or could be used to transport products such as gasoline, fuel oil, gas oil, propane, or butane, the Supreme Court of Ohio has stated:

"It is clear that at the time of the execution of the 1911 right-of-way agreement, the words 'oil' and 'gas' included products in both the refined and natural states. A restriction of these terms could easily have been achieved by use of a qualifying adjective such as 'crude' or 'natural.' Because the parties executing this agreement did not choose to qualify the terms of 'oil' and 'gas,' we must therefore assume that they intended no restrictive meaning." *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 248, 7 O.O.3d 403, 407, 374 N.E.2d 146, 151.

The evidence in this case showed that, within the petroleum industry, "petroleum" included the refined products that ORPL intended to transport through the pipeline. The terms "petroleum" and "oils" are defined elsewhere in the Revised Code to include all fractions of crude oil, including the products to be transported through the pipeline. The legislature has not used any qualifying adjectives such as "crude" or "natural" to modify "petroleum" or "oils" in R.C. 1723.01. The Ohio Supreme Court has interpreted "oil" to include products in both their refined and their natural states.

■ The reasonable construction of appropriation statutes required by *Ohio Power Co. v. Deist, supra,* compels us to conclude that "petroleum," within the meaning of R.C. 1723.01, includes refined petroleum products such as those ORPL intended to transport through the pipeline, including, without limitation, gasoline, kerosene, jet fuel, and diesel fuel.

Our holding is in accord with the Fifth Appellate District's decision in *Ohio River Pipe Line LLC v. Henley, supra,* which held that "petroleum," as used in R.C. 1723.01, included refined substances and petroleum by-products, and was not limited to natural substances.

We hold that the trial court erred in holding that ORPL did not intend to transport "petroleum" through the pipeline. The fourth assignment of error is sustained.

■ ORPL's fifth assignment of error alleges that the trial court erred in finding that the pipeline was not a public necessity. In its decision, the trial court stated:

"This Court agrees with the Defendant[s] that the logic behind the limitation on the language in the statute that limits pipeline eminent domain to unrefined petroleum, not refined derivatives, is simple. Petroleum may often be discovered in remote areas that do not have adequate road access. Thus, it would be virtually impossible for a petroleum company to remove the petroleum and deliver it to a refinery without piping it through surrounding landowners' real property. However, once the petroleum reaches the refinery, there is no longer any need for the petroleum company to assert eminent domain to deliver the

refined product to commercial establishments. The refineries are undoubtedly located in areas that have ready access to highways and interstates. Thus, it is not necessary for the petroleum company to use eminent domain in order to transport the finished by-products to the consumer. This can adequately be accomplished via the highways and interstate systems in place. Thus, the need for eminent domain ends once the petroleum is piped to the refinery. As noted by Defendant[s], the Inland Pipeline from Lima, Ohio, to Columbus, Ohio, which carries fuels, was built without resort to eminent domain."

ORPL's corporate resolution to construct the pipeline was *prima facie* evidence that the pipeline was a public necessity, in the absence of any proof of an abuse of discretion in determining the necessity of the pipeline. R.C. 163.09(B); see *Columbus Bd. of Edn. v. Holding Corp. of Ohio* (1971), 29 Ohio App.2d 114, 58 O.O.2d 165, 278 N.E.2d 693. The burden was on the landowners to establish that there was no such necessity. *Id.*

As the landowners point out in their brief, no evidence was presented to the trial court on the issue of necessity. The burden was on the landowners to establish that no public necessity existed. As no evidence was presented on the necessity issue, the landowners did not sustain their burden of proof. The trial court erred in finding that the proposed pipeline was not necessary.

The landowners argue nonetheless that the trial court never actually reached the necessity issue because it decided that ORPL had no right to bring the petitions for appropriation. Therefore, they argue, the case must be remanded for a determination of the necessity issue. Assuming, *arguendo,* that the landowners are correct in their assertion that the trial court never reached the issue of necessity, we disagree with their assertion that the issue must be addressed on remand. We hold that, by failing to present evidence to the trial court on lack of necessity, the landowners waived that issue. The fifth assignment of error is sustained.

The judgment of the trial court is reversed, and this cause is remanded for the trial court to determine the extent of the easements on the properties in question, as well as the amount of damages, if any, to which the landowners are entitled, and for further proceedings consistent with law and this opinion.

*Judgment reversed*
*and cause remanded.*

SHANNON, P.J., and WINKLER, J., concur.

RUPERT A. DOAN and RALPH WINKLER, JJ., of the First Appellate District, sitting by assignment.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.