In re: Resort at Summerlin Litigation.

J.A. JONES CONSTRUCTION COMPANY; MICCO, INC.; HELIX ELECTRIC, INC.; LLO, INC., dba ACME ELEC-TRIC; SACRAMENTO INSULATION; SWISS SERVICES OF NEVADA, INC.; INSULATION CONTRACTING AND SUPPLY, INC.; A & B PAINTING WEST, INC.; and TIFFINY DECORATING CO., Appellants, v. WILMING-TON TRUST COMPANY, Administrative Agent for Certain Lenders and Successor by Assignment to NATIONAL WESTMINSTER BANK PLC, Respondent.

No. 38362

In re: Resort at Summerlin Litigation.

WILMINGTON TRUST COMPANY, Collateral Agent for Certain Lenders and Successor by Assignment to NATIONAL WESTMINSTER BANK PLC, Appellant, v. J.A. JONES CONSTRUCTION COMPANY; MICCO, INC.; HELIX ELECTRIC, INC.; LLO, INC., dba ACME ELEC-TRIC; SACRAMENTO INSULATION; SWISS SERVICES OF NEVADA, INC.; INSULATION CONTRACTING AND SUPPLY, INC.; A & B PAINTING WEST, INC.; URIAH ENTERPRISES; TIFFINY DECORATING CO.; PHILCOR TV AND ELECTRONIC LEASING, INC., dba NEDCO SUPPLY; ST. PAUL FIRE & MARINE INSURANCE CO.; LAS VEGAS PAVING CORPORATION; and OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE RESORT AT SUMMERLIN INC. AND THE RESORT AT SUMMERLIN, LP, Respondents.

No. 39239

February 9, 2006 127 P.3d 1076

*Berkley, Gordon & Goldstein, LLP*, and *Robert A. Goldstein*, Las Vegas, for Appellant/Respondent Swiss Services.

*Hilton & Kahle* and *Cory J. Hilton*, Las Vegas; *Lewis & Roca* and *James E. Berchtold*, Las Vegas, for Appellant/Respondent LLO, Inc., d/b/a Acme Electric.

*Jolley Urga Wirth Woodbury & Standish* and *Christopher D. Craft*, Las Vegas, for Appellant/Respondent Insulation Contracting and Supply and Respondent St. Paul Fire & Marine Insurance Co.

*Jones Vargas* and *Brian P. Clark, Kevin R. Stolworthy*, and *Gordon H. Warren*, Las Vegas, for Appellant/Respondent Helix Electric.

*Leavitt Sully & Rivers* and *K. Michael Leavitt* and *David J. Rivers*, Las Vegas; *Spriggs & Hollingsworth* and *Glenn S. Greene, Michael S. Koplan, Claire E. Kresse*, and *Douglas L. Patin*, Washington, D.C., for Appellant/Respondent J.A. Jones Construction.

*O'Reilly Law Group* and *William J. Wray*, Las Vegas, for Appellant/Respondent Micco, Inc.

*Peel Brimley LLP* and *Michael W. Brimley*, Henderson, for Appellant/Respondent A & B Painting West and Respondent Uriah Enterprises.

*Williams & Wiese* and *Donald H. Williams*, Las Vegas; *Conway & Mrowiec* and *John S. Mrowiec*, Chicago, Illinois, for Appellant/Respondent Tiffiny Decorating.

*Williams & Wiese* and *Donald H. Williams*, Las Vegas, for Appellant/Respondent Sacramento Insulation.

*Kolesar & Leatham, Chtd.*, and *Randolph L. Howard*, Las Vegas; *Shea & Carlyon* and *Candace C. Carlyon* and *Ty E. Kehoe*, Las Vegas; *Miller, Starr & Regalia* and *Richard G. Carlston* and *Kenneth R. Styles*, Walnut Creek, California, for Respondent/Appellant Wilmington Trust Company.

*Gifford, Vernon & Barker* and *James M. Barker*, Las Vegas, for Respondent Las Vegas Paving.

*Haney, Woloson & Mullins* and *Robert E. Griffy*, Las Vegas, for Respondent Philcor, d/b/a Nedco.

## OPINION

By the Court, PARRAGUIRRE, J.:

In this appeal, we consider whether a holder of a deed of trust that has not elected to be bound by the terms of NRS Chapter 106 may maintain priority, over mechanic's lien claimants, for future

advances where the property owner declared bankruptcy. We also consider whether the district court erred in not applying the standard costs provisions of NRS Chapter 18, instead applying NRS 108.239(6), and holding that under that statute, only a prevailing lien claimant is entitled to costs and that those costs are assessed against the property owner. We conclude that parties that do not elect to be bound by NRS Chapter 106 are not subject to its provisions, thus, common-law principles regarding future advances apply. We also conclude that costs may only be properly taxed against the property owner because the original complaint was brought under NRS Chapter 108.

## FACTS

In December 1997, The Resort at Summerlin, Inc. (Resort) contracted with J.A. Jones Construction Company (Jones) to construct a five-star casino property in Las Vegas. While National Westminster Bank was the original lead agent in financing the project for a number of banks, Wilmington Trust Company (Wilmington) eventually acted as lead agent and holder of the deed of trust for the various lenders. The parties executed loan documents on December 30, 1997, including a Credit Agreement calling for a construction loan of $100,000,000 to be funded in two disbursements (termed ''tranches''): Construction Loan Commitment ''A'' of $60,000,000 and Construction Loan Commitment ''B'' of $40,000,000. The deed of trust was signed on December 31, 1997, and recorded January 2, 1998.

Work commenced on the project in January 1998. Disputes arose between the Resort and Jones over change orders and construction schedules. Jones and the other appellant lien claimants filed mechanic's liens and statements of fact constituting lien and complaints in late 1999 through early 2000. Numerous individual cases seeking foreclosure on the property were also filed. The cases were consolidated at the district court level under the title *In re Resort at Summerlin Construction Litigation*. In November 2000, the district court action was suspended when the Resort filed Chapter 11 bankruptcy proceedings.

On January 31, 2001, the bankruptcy court issued an order providing for remand and relief from the automatic stay so the state district court could determine the priority between the mechanic's lien claimants and the institution holding the deed of trust as an encumbrance against the Resort. The parties agreed that the lien claimants would file a supplemental complaint limited to the issue of priority. Jones and the other lien claimants filed the supplemental complaint and Wilmington answered.

In June 2001, the district court granted partial summary judgment in favor of Wilmington, ruling that NRS 106.360 did not set forth mandatory requirements for future advance instruments and instead was a ''safe harbor'' statute that a party must elect to be bound by, which Wilmington did not. Consequently, the district court ruled that the common law applied to the deed of trust at issue. A bench trial was held, and the district court ruled that Wilmington's entire deed of trust had priority over the mechanic's liens based on the recording date of the deed of trust.

Wilmington filed a memorandum of costs and disbursements in the amount of $176,391.34, before the district court entered its judgment finding Wilmington the prevailing party and awarding the requested amount of costs pursuant to NRS Chapter 18.[1] The lien claimants filed an emergency motion to stay execution of the cost portion of the judgment, which the district court granted. Jones, joined by the other lien claimants, then filed a motion to retax and settle costs. At the hearing on the motion to retax, the district court indicated that NRS Chapter 108, rather than NRS Chapter 18, controlled the award of costs in this matter and interpreted Chapter 108 to allow a cost award against the foreclosed property only. Five months later, the district court entered an order striking the previous award of costs to Wilmington and indicating that costs should be assessed against the property, but the court made no such award against the property at that time. Wilmington moved for reconsideration and the district court denied the motion.

No federal district court stay pending appeal of the federal action was entered halting sale of the property to satisfy the obligations. The bankruptcy court sold the Resort for $80,000,000 and ordered the net proceeds paid as follows: (1) to costs of closing; (2) to senior tax claims; and (3) to payment of three secured claims: (a) the first priority post-petition loan for approximately $20,000,000; (b) the payment to the provider of furniture, fixtures and equipment in the amount of $19,125,000; and the remaining going to (c) partial payment on the initial $60,000,000 loan made on the Wilmington deed of trust.

Jones and other lien claimants (referred to collectively as Jones) now challenge the priority determination, and Wilmington challenges the costs determination. On May 5, 2005, this court approved nine stipulations to dismiss with prejudice several parties from the consolidated appeals.

---

[1]Jones takes issue with the fact that the costs determination was made before the judgment was entered. NRS 18.110 requires that costs be requested only after entry of judgment. However, Jones did not raise the issue below and the simultaneous issuance of the judgment and a costs determination provided time for Jones to file its motion to retax costs.

## DISCUSSION

### Priority determination

"'Statutory interpretation is a question of law reviewed de novo.'"[2] When interpreting a statute, this court will not look beyond the statutory language unless the language is ambiguous.[3] If a statutory phrase is left undefined, this court will construe the phrase according to its plain and ordinary meaning.[4] Thus, because NRS 106.350 unambiguously requires a party to "opt-in" to protection under the provisions of NRS Chapter 106, we need not consider any supplemental information in analyzing the statute.

An instrument must meet certain requirements in order to be governed by NRS 106.300 to 106.400, thereby receiving priority. As NRS 106.350 states, those provisions "apply only to an instrument or supplement or amendment to an instrument that states clearly that it is to be governed by those provisions." NRS 106.360 provides for the execution, contents and amendment of an instrument that encumbers real property as security for future advances:

> 1. A borrower *may* execute an instrument encumbering his real property to secure future advances from a lender within a mutually agreed maximum amount of principal.
> 2. The instrument *must* state clearly:
> (a) That it secures future advances; and
> (b) The maximum amount of principal to be secured.
> 3. The maximum amount of advances of principal to be secured by the instrument may increase or decrease from time to time by amendment of the instrument.

(Emphases added.) And NRS 106.370(1) provides that "[t]he priority of a lien for future advances dates from the time that the instrument is recorded."

Jones argues that the district court erred in ruling that NRS 106.360 is an optional "safe harbor" procedure to secure future advances because (1) NRS 106.360 includes specific and mandatory "must" language; (2) Nevada statutes commonly refer to the common law if that law is to remain in effect; (3) the statutes do not utilize "safe harbor" language; and (4) the district court erred by ignoring NRS 106.360's legislative history, which it argues evinces a clear intent to supplant the uncertain common law with

---

[2]*Firestone v. State*, 120 Nev. 13, 16, 83 P.3d 279, 281 (2004) (quoting *Construction Indus. v. Chalue*, 119 Nev. 348, 351, 74 P.3d 595, 597 (2003)).

[3]*State v. Kopp*, 118 Nev. 199, 202, 43 P.3d 340, 342 (2002).

[4]*See Trustees v. Developers Surety*, 120 Nev. 56, 61, 84 P.3d 59, 62 (2004).

clear statutory law. Finally, Jones argues that even if NRS 106.360 involves a "safe harbor" provision, the district court erred when it ruled that the deed of trust did not have to state the amount or nature of the loans to secure future advances.

NRS 106.350 clearly states that if a party desires to opt-in to the safe harbor provisions of NRS 106.300 to NRS 106.400, that party must expressly state that it is governed by the statutory scheme. Therefore, parties that do not make this express notation are not governed by the statutory scheme. Here, the deed of trust documents fail to reference NRS Chapter 106 and are therefore not subject to its provisions. As NRS 106.350 is unambiguous, we need not engage in further evaluation of it.

Because the statutory scheme does not apply, we must turn to the common law to evaluate the priority issue. In *Southern Trust v. K & B Door Co.*, we identified the common law concerning the priority of obligatory future advances.[5] Where a deed of trust contains a clause for obligatory future advances, those advances preserve the deed of trust's date of recordation.[6]

Although the deed of trust in this case does not refer to construction loans or any principal amount and contains only a reference to "future" advances, we agree with the district court that the deed incorporated the Credit Agreement by reference. Section 4.01 of the deed of trust addresses "Additional Advances":

> (a) The Obligations include obligations of the Borrowers to repay advances of the Revolving Loans made by the Lenders from time to time under the Credit Agreement, all of which payments and advances are obligatory, subject to the provisions of the Credit Agreement.
> (b) This Deed of Trust secures the principal amount of the Secured Obligations outstanding at any time (including the payments and advances described in subsection (a) of this Section), plus the other Obligations (including all amounts owing under any Interest Rate Agreement), including those Obligations described in Sections 4.02 through 4.05.

As this language from the deed of trust, when combined with the credit agreement, clearly demonstrates that the advances were

---

[5]104 Nev. 564, 566, 763 P.2d 353, 354 (1988).

[6]*Id.* at 566 n.1, 763 P.2d at 354 n.1.

obligatory, we conclude there is no merit to Jones' contention that the future advances were not obligatory.[7]

Under common-law principles, obligatory future advances date back to the original date of recordation, as do the advances made to the Resort. The district court, thus, did not err in determining that Wilmington maintains priority for its advances over the mechanic's lien claimants.[8]

### Costs under NRS Chapter 108

Wilmington argues that the district court erred when it reversed its NRS Chapter 18 award of costs to Wilmington as the prevailing party, because the plaintiffs in the action never invoked the procedures of NRS Chapter 108 in their supplemental complaint. Wilmington also argues that even if NRS Chapter 108 applies, the district court erred by not awarding attorney fees under NRS 108.237(3). Wilmington's central argument is that the supplemental complaint dealt only with the issues of validity and priority of the deed of trust. Wilmington asserts that the claims against it did not involve any inquiry into the propriety of Jones' status as mechanic's lien claimants.

As set forth previously, " 'statutory interpretation is a question of law reviewed de novo.' "[9] The district court rendered its costs determination based on the 2001 version of NRS 108.239(6), which reads:

> On ascertaining the whole amount of the liens with which the premises are justly chargeable, as provided in NRS 108.221 to 108.246, inclusive, *the court shall cause the premises to be sold in satisfaction of the liens and costs, including costs of suit*, and any party in whose favor judgment may be rendered may cause the premises to be sold within the time and in the manner provided for sales on execution, issued out of any district court, for the sale of real property.[10]

The supplemental complaint references the original complaint filed under NRS Chapter 108, stating "the Lien Claimants were parties to the above-captioned action, having more specifically set

---

[7]NRS 107.050 allows the parties to a deed of trust to enter into additional convenants or agreements.

[8]Based on this holding, we need not consider any questions of mootness raised by Wilmington.

[9]*Firestone v. State*, 120 Nev. 13, 16, 83 P.3d 279, 281 (quoting *Construction Indus. v. Chalue*, 119 Nev. 348, 351, 74 P.3d 595, 597 (2003)).

[10]2003 Nev. Stat., ch. 427, § 43, at 2610 (emphasis added).

forth their claims and causes of action through their respective pleadings previously filed in this matter." The district court determined that the lien claimants were only present in the suit because they had presumptively valid lien claims. Without that status, the district court noted they would not have standing to be involved in the suit. We agree.

Wilmington cites to *A.F. Construction Co. v. Virgin River Casino* for the assertion that a lien priority dispute between mechanic's lien claimants and the holder of a deed of trust is ancillary and distinct from the priority determination contemplated by the mechanic's lien statutes.[11] It argues that this action corresponds to the type of separate action contemplated in *A.F. Construction.* However, in *A.F. Construction*, we did not state that lien priority proceedings are ancillary. Rather, we stated "that priority of a trust deed *need not* be determined in the mechanic's lien enforcement action."[12] It was, therefore, proper for the district court to consider the action as it did. Moreover, because it was the federal bankruptcy court that required a determination of priority between the deed of trust and the lien claimants, the lien claimants were not solely responsible for the supplemental action. Therefore, the district court properly construed NRS Chapter 108 to prohibit an award of costs to Wilmington.

Importantly, where a general statutory provision and a specific one cover the same subject matter, the specific provision controls.[13] Here, the more specific statute, NRS 108.239(6), controls over the general costs provisions of NRS Chapter 18. Wilmington does not fall within the type of parties that may recover costs under NRS 108.239(6). Therefore, the district court did not err in denying the costs requested by Wilmington.

Finally, Wilmington contends that if NRS Chapter 108 applies, then it was entitled to be awarded attorney fees pursuant to NRS 108.237(3). At the time of the district court's decision, NRS 108.237(3) provided that "[t]he court shall also allow to the prevailing party reasonable attorney's fees for the preparation of the lien and for representation of the lien claimant in the action."[14] This statute, however, provides for fees in the context of representation of a lien claimant, which Wilmington is not. A lien claimant

---

[11]118 Nev. 699, 705, 56 P.3d 887, 891 (2002).

[12]*Id.* (emphasis added).

[13]*Nevada Power Co. v. Haggerty*, 115 Nev. 353, 364, 989 P.2d 870, 877 (1999).

[14]2003 Nev. Stat., ch. 427, § 41, at 2608.

is a person claiming the benefit of NRS Chapter 108 by recording a notice of lien pursuant to NRS 108.226. As Wilmington is the representative of the deed of trust lenders and not a lien claimant, it cannot recover attorney fees under this section. The district court, therefore, did not err in refusing to award fees to Wilmington.

## CONCLUSION

We conclude that NRS 106.350 requires that a party's written instrument must expressly state that it is governed by NRS Chapter 106 and that Wilmington's deed of trust did not do so. As a result, the common law applies, and Wilmington's deed of trust advances maintain priority over the lien claimants. Thus, the district court did not err in determining that Wilmington had priority over the lien claimants. We also conclude that because NRS 108.239(6) and NRS 108.237(3) apply only to lien claimants, Wilmington cannot recover costs or attorney fees in the action.

Accordingly, we affirm the district court orders.

ROSE, C. J., BECKER, GIBBONS and DOUGLAS, JJ., concur.

HARDESTY, J., with whom MAUPIN, J., agrees, concurring in part and dissenting in part:

I concur in the result reached by the majority on the priority of Wilmington's advances but dissent from the denial of Wilmington's cost award.

This case began in district court as a mechanic's lien claim against the Resort. Wilmington only became a party after the bankruptcy court lifted the stay for the district court to determine the discrete issue of the priority of the additional advances under the deed of trust. To pursue this claim, the supplemental complaint was filed adding Wilmington to the case, and the district court proceeded to trial on the deed of trust priority.

In *A.F. Construction Co. v. Virgin River Casino*, this court confirmed that a lien priority dispute between mechanic's lien claimants and the holder of a deed of trust is ancillary and distinct from the priority determination contemplated by the mechanic's lien statutes.[1] That is precisely what occurred in this case. The district court resolved the priority of the advances under the deed of trust but did not resolve the mechanic's liens. Therefore, NRS Chapter 108 did not apply, and the district court's original order awarding costs to Wilmington as the prevailing party under either NRS 18.020 or NRS 18.050 was proper. I would reverse the dis-

[1]118 Nev. 699, 705, 56 P.3d 887, 891 (2002).

trict court's order on reconsideration holding that NRS 108.239(6) precluded an award of costs to Wilmington and reinstate the original order awarding costs.