**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re:                                  )    BAP No.   NV-11-1114-KiPaD
                                        )
ROBERT A. ALEXANDER and                 )    Bk. No.   08-18441-MKN
GLORIA J. ALEXANDER,                    )
                                        )
                    Debtors.            )
_____ )
                                        )
KATHLEEN A. LEAVITT, Chapter            )
13 Trustee,                             )
                                        )
                    Appellant,          )
                                        )
v.                                      )    **O P I N I O N**
                                        )
ROBERT A. ALEXANDER; GLORIA             )
J. ALEXANDER,                           )
                                        )
                    Appellees.          )
_____ )

Argued and Submitted on June 15, 2012
at Las Vegas, Nevada

Filed - June 27, 2012

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Mike K. Nakagawa, Chief Bankruptcy Judge, Presiding

Appearances:    Lauren A. Peña, Esq. argued for appellant, Kathleen
                A. Leavitt, chapter 13 trustee;
                Troy S. Fox, Esq. of Crosby & Associates argued for
                appellees, Robert and Gloria Alexander

Before:  KIRSCHER, PAPPAS, and DUNN, Bankruptcy Judges.

KIRSCHER, Bankruptcy Judge:

Appellant, chapter 13[1] trustee Kathleen A. Leavitt ("Trustee"), appeals an order from the bankruptcy court overruling her objection to debtors' claimed exemption for a mobile kitchen as a "vehicle." We AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Debtors, Robert A. Alexander and Gloria J. Alexander ("Debtors"), filed a chapter 13 bankruptcy petition on July 30, 2008. At that time, both Debtors were employed as bus drivers for the Clark County School District. Mr. Alexander has since retired. Prior to filing their bankruptcy case, Debtors purchased a 2007 Mobile Kitchen Trailer ("Mobile Kitchen") to be used for a mobile barbeque sandwich business. Debtors used the Mobile Kitchen approximately twelve times prior to the bankruptcy, but between licensing issues and Mr. Alexander's health problems, they ceased using the Mobile Kitchen until Mrs. Alexander could retire to assist Mr. Alexander in operating it.

Debtors listed the Mobile Kitchen in their original Schedule B with a value of $25,000; they listed the barbeque business, "B & E Barbeque," as having a value of $0. In their Schedule C, Debtors listed the Mobile Kitchen as a "tool of the trade" under NEV. REV. STAT. ("NRS") § 21.090(1)(d) with a claimed exemption value of $20,000. Debtors also listed in their Schedule B a 2004 BMW 5 Series and a 2004 Dodge Ram 1500. They did not exempt these

---

[1] Unless specified otherwise, all chapter, code, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

-2-

vehicles because both were fully encumbered.

Over the next two years, Trustee objected to Debtors' claimed exemptions for the Mobile Kitchen as either a "tool of the trade" under NRS § 21.090(1)(d) or as a "necessary household good" under NRS § 21.090(1)(b). The parties did eventually agree to value the Mobile Kitchen at $17,000.

Faced with a contested confirmation hearing due to the exemption dispute, the parties each were instructed to submit a two-page statement regarding their position on the Mobile Kitchen exemption. In their statement, Debtors argued that the Mobile Kitchen qualified as a "tool of the trade" because they intended to use it as a business in the future. Debtors also argued the Mobile Kitchen qualified as a "necessary household good." Alternatively, Debtors proposed a new theory - that the Mobile Kitchen could be considered a "vehicle" exemptible under NRS § 21.090(1)(f).[2]

At the confirmation hearing on August 25, 2010, the bankruptcy court directed the parties to brief the issue as to how mobile kitchens of this type had been treated in other courts. Both parties submitted their supplemental briefs on September 15, 2010. Neither party could locate case law from Nevada (or any other jurisdiction) addressing the classification of a mobile kitchen.

Debtors' brief asserted the same three possible exemption categories for the Mobile Kitchen, contending that it was

---

[2] NRS § 21.090(1)(f) exempts "one vehicle if the judgment debtor's equity does not exceed $15,000 or the creditor is paid an amount equal to any excess above that equity."

-3-

Trustee's burden to prove the exemption was not valid. To support their position that it was an exemptible "vehicle," Debtors attached copies of the Certificate of Registered Ownership for the Mobile Kitchen from the Nevada Department of Motor Vehicles, a copy of a receipt from the DMV for the Mobile Kitchen's title and registration fees, and a copy of a DMV Field Service inspection. Debtors contended that because the Mobile Kitchen had a Vehicle Identification Number and because it was registered with the DMV, it was a "vehicle" under Nevada law and therefore exemptible under NRS § 21.090(1)(f).

In her brief, Trustee maintained that the Mobile Kitchen was not encompassed in any Nevada exemption provisions, and thus its value had to be included in the liquidation analysis for confirmation of Debtors' proposed plan. Trustee focused most of her argument on the "tools of the trade" exemption, contending that the Mobile Kitchen did not qualify because it had not contributed to Debtors' support to a reasonable and meaningful extent in the past as required by Nevada law. Trustee briefly contended that the Mobile Kitchen was not an exemptible "household good" because it was not in, or a part of, Debtors' household. She also opposed the "vehicle" exemption because the Mobile Kitchen was not essential to Debtors' transportation.

After a brief hearing on the exemption matter, the bankruptcy court entered its Memorandum Decision on February 22, 2011. The court agreed with Trustee that the Mobile Kitchen was not exemptible as a "tool of the trade" under NRS § 21.090(1)(d) because it had not provided support for Debtors in the past, and, under In re Kolsch, 58 B.R. 67, 70 (Bankr. D. Nev. 1986), Debtors

-4-

presented no evidence demonstrating that a reasonable or realistic prospect existed of using the Mobile Kitchen in the future to earn Debtors their living. The court also sustained Trustee's objection that the Mobile Kitchen was not exemptible under NRS § 21.090(1)(b) because it was not a "household good" or a "necessary" household good. The court rejected Debtors' argument that the Mobile Kitchen was merely a "backyard barbeque" since it is mounted on a trailer and includes a refrigerator, freezer, sink, and a sandwich preparation machine. Further, Debtors had presented no evidence that the Mobile Kitchen served as their household kitchen or even as a backyard barbeque, and no meals were prepared there for Debtors or their dependents.

However, the bankruptcy court overruled Trustee's objection to Debtors' exemption for the Mobile Kitchen as a "vehicle" under NRS § 21.090(1)(f). Acknowledging that Chapter 21 did not define "vehicle" or refer to a definition of "vehicle," the court turned to Chapter 482 of the NRS (Motor Vehicles and Trailers: Licensing, Registration, Sales and Leases), which defines "vehicle" as "every device in, upon or by which any person or property is or may be transported or drawn upon a public highway." The court found that the Mobile Kitchen was a device upon or by which property may be drawn upon a public highway, and thus it fell within the definition of vehicle under NRS § 482.135. Turning then to NRS § 482.125, which defines "trailer" as "every vehicle without motive power designed to carry property or passengers wholly on its own structure and to be drawn by a motor vehicle," the court found that the Mobile Kitchen fell within the definition of trailer because it has no motor power and, for the same reason,

-5-

could not fall within the definition of a "motor vehicle" under NRS § 482.075.[3]

The bankruptcy court then observed that NRS § 21.090(1)(f) refers to an exemption for "one vehicle" rather than to "one motor vehicle," and it did not exclude trailers. Reasoning that the legislature was not ignorant of the distinctions it drew between "vehicles" and "motor vehicles" when enacting the exemption statutes, and taking into consideration Nevada's policy that exemptions be liberally construed in favor of the debtor, the bankruptcy court concluded that the Mobile Kitchen could be exempted under NRS § 21.090(1)(f). Although the exemption limit under NRS § 21.090(1)(f) is $15,000 for one vehicle, because joint debtors are allowed to "stack" exemptions in Nevada (for a total of $30,000), Debtors were allowed an exemption for $17,000.

On February 22, 2011, the bankruptcy court entered an order overruling Trustee's objection and allowing Debtors' exemption for the Mobile Kitchen. Debtors filed their fourth amended Schedule C on February 25, 2011, reflecting the Mobile Kitchen as an exempt vehicle under NRS § 21.090(1)(f). Trustee timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 157(b)(2)(B) and 1334. We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court err when it determined that the Mobile Kitchen could be exempted as a "vehicle" under NRS

---

[3] NRS § 482.075 defines "motor vehicle" as "every vehicle as defined in NRS § 482.135 which is self-propelled."

-6-

§ 21.090(1)(f)?

## IV. STANDARDS OF REVIEW

We review a bankruptcy court's findings of fact for clear error and review de novo its conclusions of law, including interpretations of state exemption statutes. Simpson v. Burkart (In re Simpson), 366 B.R. 64, 70 (9th Cir. BAP 2007), aff'd, 557 F.3d 1010, 1014 (9th Cir. 2009).

## V. DISCUSSION

**A. The bankruptcy court did not err when it determined that the Mobile Kitchen could be exempted as a "vehicle" under NRS § 21.090(1)(f).**

**1. Applicable law.**

Upon the filing of a bankruptcy petition, an estate is created consisting of all legal and equitable interests of the debtor in property as of the date of the filing of the petition. § 541(a)(1). Section 522 allows a debtor to exempt certain property from his or her estate. "The purpose of Nevada's exemption statutes is 'to secure to the debtor the necessary means of gaining a livelihood, while doing as little injury as possible to the creditor.'" Savage v. Pierson, 157 P.3d 697, 700 (Nev. 2007) (quoting Kreig v. Fellows, 30 P. 994, 995 (Nev. 1892)).

Exemptions are to be liberally construed in favor of the debtor who claims the exemption. Arrol v. Broach (In re Arrol), 170 F.3d 934, 937 (9th Cir. 1999); In re Christensen, 149 P.3d 40, 43 (Nev. 2006) ("We liberally and beneficially construe our state exemption statutes in favor of the debtor."). A claim of exemption is presumed valid, and the burden is on the objecting party to prove, by a preponderance of the evidence, that an exemption is improperly claimed. Tyner v. Nicholson (In re

-7-

Nicholson), 435 B.R. 622, 630, 634 (9th Cir. BAP 2010); Rule 4003(c); § 522(l).

Nevada has opted out of the federal exemption scheme provided under § 522(d). See NRS § 21.090(3). Therefore, Nevada law governs substantive issues regarding exemptions. The Nevada Supreme Court has not determined whether a "mobile kitchen trailer" or similar device is exemptible under state law. "When a decision turns on applicable state law and the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case." Aetna Cas. & Sur. Co. v. Sheft, 989 F.2d 1105, 1108 (9th Cir. 1993).

**2. Analysis.**

Although Trustee concedes that Chapter 482 is the only chapter within the NRS defining vehicles, she contends the bankruptcy court erroneously looked to NRS § 482.135 for the definition of "vehicle," which resulted in a strict interpretation directly controverting the legislative intent of NRS § 21.090(1)(f). Specifically, Trustee argues that because the purpose and intent behind Chapter 482 are so radically different from the exemption statutes in Chapter 21, its definition cannot be applied to any other statutes outside of Chapter 482. Trustee contends that the ordinary, contemporary meaning of "vehicle" should be used to determine the exemption. Trustee also argues that legislative history reveals Nevada lawmakers intended NRS § 21.090(1)(f) to provide debtors an exemption only for a reliable vehicle to travel to and from work.

Because we are interpreting the instant statute as we believe

-8-

the Nevada Supreme Court would interpret it, we apply Nevada rules for statutory construction. Sticka v. Casserino (In re Casserino), 290 B.R. 735, 737, 739-40 (9th Cir. BAP 2003) (scope of Oregon state law exemption involves construction of state law using Oregon policy), aff'd, 379 F.3d 1069 (9th Cir. 2004); Citizens for Responsible Gov't State Political Action Comm. v. Davidson, 236 F.3d 1174, 1190 (10th Cir. 2000) (applying Colorado rules of statutory construction to Colorado statute); Hodes v. Jenkins (In re Hodes), 308 B.R. 61, 68 (10th Cir. BAP 2004) (bankruptcy court had to interpret Kansas exemption statute according to Kansas' rules of statutory construction).

When interpreting a statutory provision, Nevada courts first look to the plain language of the statute and ascribe words their plain meaning. Savage, 157 P.3d at 699. If a statutory phrase is left undefined, the court construes the phrase according to its plain and ordinary meaning. In re Resort at Summerlin Litig., 127 P.3d 1076, 1079 (Nev. 2006). We generally presume that the plain meaning of the words reflects the legislature's intent, unless that reading violates the spirit of the act or leads to an absurd result. Villanueva v. State, 27 P.3d 443, 446 (Nev. 2001). The court will not look beyond the statutory language unless the language is ambiguous. In re Resort at Summerlin Litig., 127 P.3d at 1079. Only when a statute is ambiguous, meaning it is capable of more than one reasonable interpretation, will the court ascertain the legislative intent by analyzing the statute's legislative history and construing the statute in accordance with reason and public policy. Great Basin Water Network v. State Eng'r, 234 P.3d 912, 918 (Nev. 2010). Whenever possible, a

-9-

statute must be construed so that no part of it is rendered nugatory or mere surplusage. Savage, 157 P.3d at 699.

NRS § 21.090(1)(f) provides an exemption for "one vehicle if the judgment debtor's equity does not exceed $15,000 or the creditor is paid an amount equal to any excess above that equity." The word in question here is "vehicle." The term vehicle is not defined in Chapter 21 of the NRS. Therefore, because "vehicle" has been left undefined in Chapter 21, we must construe "vehicle" according to its plain and ordinary meaning. In re Resort at Summerlin Litig., 127 P.3d at 1079. Black's Law Dictionary defines vehicle as: "1. An instrument of transportation or conveyance. 2. Any conveyance used in transporting passengers or things by land, water, or air." Black's Law Dictionary 1693 (9th ed. 2009). The American Heritage Dictionary defines vehicle as: "1. A device for carrying passengers, goods, or equipment." American Heritage Dictionary 752 (2d ed. 1983). Given these broad definitions, the Mobile Kitchen is clearly a vehicle, as it is a conveyance used to transport things by land, and/or it is a device for carrying goods or equipment. Trustee's definition of vehicle as "a device used to transport people between locations" is far too narrow, and she fails to cite any authority to support it. In addition, the fact the Mobile Kitchen is registered with the Nevada DMV and has a Vehicle Identification Number makes an even more compelling case that it is, by its plain and ordinary meaning, a vehicle.

Rather than turning to the plain and ordinary meaning of vehicle, the bankruptcy court consulted Chapter 482 of the NRS - the only chapter in which vehicle is defined - to find the meaning

-10-

of the word. Contrary to Trustee's argument, this was not necessarily erroneous. In another exemption case, the Nevada Supreme Court was asked to determine whether a security deposit in a residential lease was exempt under either the homestead exemption (NRS § 21.090(1)(l)) or the dwelling exemption (NRS § 21.090(1)(m)). Savage, 157 P.3d at 698. Although the Court concluded that neither exemption applied, to determine whether the deposit fell under the homestead exemption, the Court turned to NRS Chapter 115 -- Homesteads -- where the term "homestead" is defined, as it is not defined in Chapter 21. Id. at 700. The Court noted that NRS § 115.010(2) limits homestead exemptions "only to that amount of equity in property held by the claimant which does not exceed $350,000 in value." Id. (emphasis in original). After reviewing the definition of "equity" in NRS § 115.005(1) and decisions by courts in other jurisdictions with a similar homestead exemption statute, the Savage court held that given the plain language of NRS § 21.090(1)(l), NRS § 115.005(1), and NRS § 115.010(2), the security deposit was not exempt under Nevada law. Id. at 702.[4]

Therefore, while not explicitly stating so, when a term is not defined in the pertinent chapter of the NRS, Savage allows the court to look to other chapters within the NRS where the term at

---

[4] The Savage court also noted that the term "dwelling" is not defined in NRS Chapter 21 or in NRS Chapter 115, but that "dwelling" is defined in NRS Chapter 118 -- Landlord/Tenant. However, because the definition of "dwelling" was not at issue, the Court did not explore it. Nevertheless, nothing indicates the Court would not have reviewed Chapter 118 had the definition of "dwelling" been in dispute. Savage, 157 P.3d at 702 n.29. Actually, statements made by the Court indicate that it would have looked to Chapter 118 for guidance if needed. Id. at 703 n.35.

-11-

issue is defined for guidance. Several other courts employ this same rule. See United States v. Wade, 181 F. Supp. 2d 715 (E.D. Mich. 2002) (court looked to other sections of Michigan statutes for guidance on definition of term "peace officer" where term was not expressly defined); Ohio River Pipe Line, LLC v. Gutheil, 761 N.E.2d 633 (Ohio Ct. App. 2001) (in construing statutory terms "petroleum" and "oil" court is guided by the legislature's use of these same terms defined elsewhere in the Revised Code); State v. Vega, 691 A.2d 22 (Conn. App. Ct. 1997) (when statute does not define phrase, court may look to meaning given phrase in unrelated statutes and consider that where legislature uses same phrase it intends same meaning). Using either the plain and ordinary meaning of "vehicle" or using its definition in Chapter 482, we do not consider the term to be ambiguous, and thus we need not look to legislative intent to determine its meaning. In NRS § 482.135, vehicle is defined as "every device in, upon or by which any person or property is or may be transported or drawn upon a public highway." In that same chapter, "trailer" is defined as "every vehicle without motive power designed to carry property or passengers wholly on its own structure and to be drawn by a motor vehicle." NRS § 482.125. The Mobile Kitchen is a device upon or by which property may be drawn upon a public highway, so it certainly meets the definition of "vehicle." It also meets the definition of "trailer" because it lacks motive power but is designed to carry property wholly on its own structure and be drawn by a motor vehicle. NRS § 21.090(1)(f) allows a debtor an exemption for "one vehicle." The statute does not require the vehicle to be a "motor vehicle," and it does not expressly exclude

-12-

trailers.

Therefore, considering Nevada's policy that exemptions be liberally and beneficially construed in favor of the debtor, that the Mobile Kitchen is a "vehicle" under Nevada law, and that NRS § 21.090(1)(f) does not expressly exclude trailers, we conclude the Mobile Kitchen is exempt under NRS § 21.090(1)(f). While Chapter 482 and Chapter 21 may have different purposes, nothing in either Chapter suggests they are in contravention with one another or that the bankruptcy court's interpretation of the word vehicle "directly defies" the purpose of the exemption statute as Trustee argues. Considering the particular facts of this case, allowing the Mobile Kitchen as an exempted vehicle does not lead to an absurd result, particularly because it is, at least to some degree, tied with Debtors' future livelihood.[5] If the Nevada Legislature intended to limit exempted vehicles to only those vehicles necessary for a debtor's transportation to and from work or to maintain the debtor's livelihood, it could have easily done so by providing that narrow definition in the exemption statutes.

Therefore, whether applying the plain and ordinary meaning of vehicle or its defined meaning in Chapter 482, the bankruptcy court did not err when it determined that the Mobile Kitchen could be exempted as a "vehicle" under NRS § 21.090(1)(f).

---

[5] Notwithstanding the requirement that exemption statutes be liberally construed, allowing a debtor to exempt as a vehicle all types and varieties of trailers could conceivably lead to absurd results, such as where a particular trailer serves an undisputably nonessential or recreational purpose. In such instances, the bankruptcy court may properly consider whether the application of a dictionary, statutory, or some other definition to the term "vehicle" in the exemption statute is appropriate. In addition, to avoid such results, the legislature may consider amending the statute to include an applicable definition.

-13-

**B.   We cannot reach the issue of whether the bankruptcy court was correct in holding that the Mobile Kitchen was not exemptible as a "necessary household good" under NRS § 21.090(1)(b).**

The Panel may raise jurisdictional issues sua sponte. <u>Paine v. Dickey (In re Paine)</u>, 250 B.R. 99, 104 (9th Cir. BAP 2000). The parties have briefed this issue assuming we have jurisdiction to review it.  As explained below, we lack jurisdiction over this matter, and therefore we may not consider it.

Trustee asks us to affirm the bankruptcy court's determination that the Mobile Kitchen was not an exemptible "necessary household good" under NRS § 21.090(1)(b).  Notably, Trustee did not raise this issue in her Statement of Issues on Appeal.  Furthermore, since she was the prevailing party on this issue, she lacks standing to appeal this portion of the exemption order.  See <u>Picard v. Credit Solutions, Inc.</u>, 564 F.3d 1249, 1256 (11th Cir. 2009) ("'Ordinarily, the prevailing party does not have standing to appeal because it is assumed that the judgment has caused that party no injury.'") (quoting <u>Agripost, Inc. v. Miami-Dade County</u>, 195 F.3d 1225, 1230 (11th Cir. 1999) (citing <u>Deposit Guar. Nat'l Bank v. Roper</u>, 445 U.S. 326, 333 (1980)).  An exception to this rule exists where the prevailing party is prejudiced by the preclusive effect of the trial court's decision, but this exception is not applicable here.  <u>Id.</u>

Debtors attempt to argue that the bankruptcy court erred to the extent it determined that the Mobile Kitchen was not "necessary" for their reasonable comfort.  Debtors did not file a cross-appeal on this issue.  Under Rule 8002(a), a party wishing to cross-appeal must file its notice of appeal within 14 days of the filing date of the first notice of appeal.  "An appellee who

-14-

fails to file a cross-appeal cannot attack a judgment with a view towards enlarging his own rights." Spurlock v. FBI, 69 F.3d 1010, 1018 (9th Cir. 1995) (citations omitted). See also Greenlaw v. United States, 554 U.S. 237, 244-45 (2008) ("Under [the] unwritten but longstanding [cross-appeal] rule, an appellate court may not alter a judgment to benefit a non-appealing party. This Court, from its earliest years, has recognized that it takes a cross-appeal to justify a remedy in favor of an appellee.") (citing McDonough v. Dannery, 3 Dall. 188, 198 (1796)). Because Debtors seek to enlarge their exemption rights, a timely filed notice of cross-appeal was required.

However, in reviewing the bankruptcy court docket, we discovered that Debtors filed a Supplemental Statement of Issues on Appeal and Designation of Record ("Statement"). Unfortunately, we could not locate any authority, and the parties have cited none, holding that a statement of this nature, even though timely filed, can substitute as a notice of cross-appeal. In any event, we cannot treat Debtors' Statement as a proper cross-appeal.

Under Rule 8006, within 14 days after appellant has served its statement of the issues on appeal, the appellee may file and serve on the appellant a designation of additional items to be included in the record on appeal. However, the appellee may file and serve a counter-statement only if the appellee has filed a cross-appeal. Id.; see also 718 Arch St. Assocs., Ltd. v. Blatstein (In re Blatstein), 260 B.R. 698, 710 (E.D. Pa. 2001); Frymire v. PaineWebber, Inc., 107 B.R. 506, 513-14 (E.D. Pa. 1989) (filing of notice of cross-appeal is a prerequisite to the filing of a counter-statement of the issues on appeal and designation of

-15-

additional items, and such counter-statement cannot substitute for the filing of a notice of cross-appeal).

In the absence of a timely filed notice of cross-appeal, the Panel does not have jurisdiction to address the issue raised by Debtors. See Abrams v. Sea Palms Assocs., Ltd. (In re Abrams), 229 B.R. 784, 788 (9th Cir. BAP 1999) (applying prior Rule 8002(a) and its 10-day rule), aff'd, 242 F.3d 380 (9th Cir. 2000) (unpublished table decision). Because Debtors did not timely file a notice of cross-appeal, and because the Statement is not a proper substitute for one, we lack jurisdiction to decide this issue.

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM.

-16-