Jury, Bankruptcy Judge,
Dissenting:
To answer the narrow question presented to the Panel in this appeal, the majority, applying its version of statutory construction, has swept a broad, inclusive brush across the landscape of exclusions from current monthly-income for the purposes of a chapter 13 means test analysis. As highlighted by the majority’s recitation of the myriad of benefit programs “provided by” the Social Security Act (SSA) — a “sprawling statute ... providing for many benefit programs, some of which, are familiar and others obscure” — this approach would exclude from the monies which must be committed to pay chapter 13 creditors any funds remotely connected to the SSA and the federal government — so remotely connected that it would exclude from disposable- income payments to a debtor even though not one dollar came from the federal government and most people would have no idea the SSA had any connection to the payments received.
I submit that this outcome was not what Congress intended, based on statutory construction, the purposes of the means test, and common sense.
Section 101(10A)(B) defines current monthly income in pertinent part as:
.,. any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor’s spouse), on a regular basis for the household expenses of the debtor or the debtor’s dependents (and in a joint case the debtor’s spouse if not otherwise a dependent), but excludes benefits, received under the Social Security Act —
11 U.S.C. § 101(10A)(B) (emphasis added). As noted by the majority,' the Panel’s task is ,to determine whether Adoption Assistance payments are included in the phrase “benefits received under the Social Security Act.” At least two interpretations of § 101(10A)(B) have developed since the provision was added to the Bankruptcy Code as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (“BAPCPA”). -The majority has joined the trustee (and rejected the Debt- or’s argument) in concluding that the phrase is ambiguous, with which I agree, so I need-not recite the varying interpretations of the words in order to establish that point. However, I am not alone in construing this ambiguity narrowly; other courts have reached similar conclusions.
’ Adoption Assistance payments are only excluded from current monthly income if they are properly characterized as benefits received under the Social” Security Act. § 101(10A)(B). ' To be' “benefit^ received under,” the benefits must more than “merely ‘relate to’ or be ‘envisioned by’ or ‘induced by’ the Social Security Act[,]” they must be received under the SSA. In re Kucharz, 418 B.R. 635, 641 (Bankr.C.D.Ill.2009).
-Multiple words in the phrase are ambiguous. Most discussed in the cases and by *625 the parties is the term “under.” Webster’s Third New International Dictionary defines “under,” in the context as used in § 101(10A)(B), as “required by” or “in accordance with.” Webster’s Third New International Dictionary 1143 (1993). Considering only this definition of “under”, a benefit “received under” the Social Security Act may refer to a direct benefit made by the federal government or it may refer to an indirect benefit made by a state-run program.-
Focusing the statutory construction analysis just on the term “under”, however, presents an incomplete view. The word “under” directly follows the word “received” and in my view the words must be read together. ..Simply defined, “received” means “to come into possession of.” Id. at 608. Therefore, read together, “received under” means “to come into possession of as required by or in accordance with” the SSA. This definition certainly suggests that unless the Social Security Administration is directly involved with the payment of money to the Debtor and the determination of who is entitled to the funds, the benefits are not “received under” the SSA. The majority, in its statutory construction analysis, only,;.considers each word in isolation, tossing off the word “received”[1] without connecting it at all to “under the Social Security Act.” As seen in my analysis below, I consider this isolation view as error because it ignores the source of the funds and how the Debtor, may qualify for them.
Everyone agreeing that the statute is ambiguous, and that the words collectively or in isolation can have differing meanings, I now turn, as I must, to the statute’s context within the overall statutory framework. "When a statute is ambiguous, the Court may ascertain the legislative intent by analyzing the statute’s legislative history while construing the statute in accordance” with logic as well as public policy. Leavitt v. Alexander (In re Alexander), 472 B.R. 815, 822 (9th Cir. BAP 2012).
The legislative history of BAPCPA does not provide much assistance in determining Congress’s Intent, as the “information on the final version is sparse” and “inconclusive.”' In re Baden, 396 B.R. 617, 622 (Bankr.M.D.Pa.2008); In re Kucharz, 418 B.R. at 640; see generally H.R. 250, 105th Cong. (1997).[2] Howevér, it established that Congress had. two primary concerns when ¿nacting BAPCPA. The first is ensuring that the individuals who have the ability to pay their debts in fact do pay. See Tousey v. Neary (In re Ross-Tousey), 549 F.3d 1148, 1151 (7th Cir.2008); see also In re Baden, 396 B.R. at 622. The second was to “proteet[] education and retirement savings from being drained by creditors.” In re Baden, 396 B.R. at 622 (citing H.R.Rep No. 109-31(1), at 2-3, 115 (2005), U.S.Code Cong. & Admin. News 2005, pp. 88-89, 177-78; 151 Cong. Rec. S2470 (Mar. 10, 2005); 151 Cong. Rec. S1726 (Feb. 28, 2005)).
Excluding Adoption Assistance payments from current monthly income is not consistent with these goals. As stated, § 101(10A)(A) defines current monthly income as “the average monthly income from all sources that the debtor receives without regard to whether' such income is taxable' income.” Then,' § 101(10A)(B) specifically excludes' three' types of payments from current monthly income: ben *626 efits received under the Social. Security-Act, payments to-victims of war. crimes or crimes against humanity on account of their status, and payments to victims of international terrorism. That. Congress specifically .excluded- only these three specific sources of income signals an intent to keep the exclusions narrow. Construing the exceptions in the broadest terms is inconsistent with the purpose of ensuring that the individuals who have the ability to pay their debts in fact do' pay. The majority’s interpretation of § 101(10A) creates an exception that swallows the rule; it opens the door for exclusions where a federal grant given to a state, no matter how small a percentage of what a debtor receives, would cause an entire category of income to be excluded.
Excluding Adoption Assistance payments also does not meet the second stated purpose — protecting retirement sayings from being drained by creditors. Most of us think of Social Security payments as retirement income — i.e., what a retired person will need for basic living expenses. Adoption Assistance payments hardly fit that use and it cannot be argued they meet that stated purpose. The logical conclusion to draw from the legislative history is that Congress wanted to protect Social Security retirement benefits (theoretically, paid .in by debtors from their lifetime earning careers) from the means test but otherwise sought to maximize the types of income to be used to pay creditors.
Although no reported cases address whether Adoption Assistance payments are a benefit under the SSA, there have been a handful of cases that have addressed whether unemployment compensation is one of the benefits received under the Act. I recognize a split in-authority on the issue. On one hand, In re Sorrell, 359 B.R. 167 (Bankr.S.D.Ohio 2007), and In re Munger, 370 B.R. 21 (Bankr.D.Mass.2007), have held that unemployment .compensation is one of the benefits received under the SSA. These courts reason that although unemployment compensation is administered through a number of different state-run programs, the common funding source of all unemployment compensation is the SSA. They, take the position that § 101(10A)(B) does not make a distinction between direct and indirect benefits. See In re Sorrell, 359 B.R. at 181; In re Munger, 370 B.R. at 23.
On the other hand, In re Baden and In re Kucharz have held that unemployment compensation is not one of the benefits received undér the SSA. In so holding, both courts take the position that unemployment compensation is governed by state law and administered pursuant to state-run agencies. They thus conclude that unemployment compensation is not paid under the SSA; rather, it is merely an- indirect benefit. See In re Kucharz, 418 B.R. at 643; In re Baden, 396 B.R. at 623. As such, courts on either side of the split ultimately base their respective positions on the source of the funds.
Although these cases are distinguishable since they address a different governmental benefit;; i.e., unemployment compensation vs. Adoption Assistance payments, the reasoning used by the courts is a helpful consideration in my determination-that Adoption Assistance payments are not excluded from current monthly income.
I find the reasoning in In re Kucharz persuasive. After giving an in depth analysis of the origins of the SSA and unemployment compensation, the Kucharz court concluded that “unemployment insurance claims are submitted to, evaluated and paid or denied by state officials implementing state law,” and administered by.a state agency, that was specially created to handle unemployment compensation, independent of the SSA. Id. at 639. The un *627 employment compensation benefits are therefore not received under the SSA. This reasoning is compelling, and the source of funds for the benefits is strikingly similar to the case at hand. As will be further explained below, the Adoption Assistance payments are paid to the Debtor as required by state law, not by the SSA; thus, like unemployment compensation, the Debtor does not receive Adoption Assistance payments under the Act.
As the majority highlights, the Social Security Act, 42 U.S.C. §§ 402-34, speaks of various programs. Whereas some payments made as part of the benefit programs come directly to the recipient from the Social Security Administration, for some of the programs, the Social Security Administration contributes funds to state-run programs which combine those funds with monies from other sources to provide benefits to the recipients. The Ninth Circuit in Drummond v. Welsh (In re Welsh), 711 F.3d 1120 (9th Cir.2013), held that payments made by the Social Security Administration are excluded from the computation of current monthly income, arguably because they are solely sourced in Social Security funds and paid by that agency directly to the recipient. Adoption Assistance payments are not such payments, as money is paid to the adoptive parents by the state-run programs. The State of Cal-ifornia, like all other States that participate, accepts funds from the federal government under Title IV-E of the Social Security Act, but fifty percent of the funding also comes from state and local sources. California has created a separate statutory scheme to comply with the federal requirements. As such, the administrative agency which the State has designated to administer the Adoption Assistance program is the California Department of Social Services. See Cal. Wei. & Inst.Code § 16121. In order to receive funding, eaóh adoptive parent- must enter into a written agreement with the State of- California. 42 U.S.C. §§ 673(a)(1) & 675(3). The federal government is not a party to these contracts.
The simple fact is that Adoption Assistance payments are paid to the Debtor as required by state law, not by the SSA, nor are they paid by the Social Security Administration. Furthermore, the qualifications to receive such funds are determined by state statutes and regulations, and the State of California manages and staffs the prograrn. As such, although the SSA may be a source of funds which make up part of the payment, the Adoption Assistance payments are received from the State of California and its corresponding state agency. Therefore, I conclude that Debtor does not receive the -Adoption Assistance -payment under the SSA, but .under the California Welfare and Institutions Code.
Concluding that Congress could not have intended the broad exclusions from chapter 13 disposable income that the majority proclaims, I respectfully dissent.

. "The word 'received,' at least in isolation, also presents no difficulty. There is no question that the Debtor 'receives' the Adoption Assistance payments.” Majority Opinion at 616.

. There is no direct reference to the Social Security exclusion, at all in the legislative history.